Charles M. Spindler and Anna T. Spindler v. Commissioner.
Spindler v. Commissioner
Docket No. 94682.
United States Tax Court
T.C. Memo 1963-202; 1963 Tax Ct. Memo LEXIS 146; 22 T.C.M. (CCH) 1011; T.C.M. (RIA) 63202; July 29, 1963
*146 Petitioner, who is primarily engaged in the business of an architect, also owned either individually or with associates, some six parcels of business real estate which were procured and operated for rental income. In 1955 he and an associate purchased an option on a vacant parcel of realty. They tried to interest prospective tenants for whom they would build a store building. They did not succeed and in 1957 they allowed the option to lapse. Held, under section 1234 I.R.C. of 1954 petitioner was entitled to an ordinary loss for the amount he paid for the option, $4,000, plus subsequent expenditures on the parcel, as the optioned property was of the character of real estate used in his business within the meaning of section 1221(2) and section 1231(a), I.R.C. of 1954. David W. Bernstein, 135 Broadway, New York, N. Y., for petitioners. Lionel Savadove, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioners' income tax for 1957 in the amount of $1,108.93. The only issue is whether the loss incurred upon the lapse of an option is a capital loss or an ordinary loss. Findings of Fact Some of the facts are stipulated and they are found accordingly. Petitioners are husband and wife who reside in Brooklyn, New York, where Charles M. Spindler, who will be called petitioner, was primarily engaged in business as an architect. During 1957 petitioner, either individually or in partnership *148 with others, owned six rented business properties which were purchased, improved and held for the purpose of producing rental income. He also owned stock in a corporation owning other business property held for rental purposes. On June 9, 1955, petitioner purchased a one-half interest in an option to purchase vacant land (25 feet wide and 150 feet long) from the Long Island Rail Road, at a cost of $4,000. Subsequent to June 9, 1955, the following additional sums were expended by petitioner: To William J. Dunsing
Survey of Property covered by
option
$ 85
To Joseph J. Fischer, Esq.
Legal expenses relating to option
175
Cash for a retaining wall to main-
tain property in condition exist-
ing at time of purchase of option
100
Total $360
Petitioner spent time in managing and supervising the properties, including the three he owned individually and the three he owned with his associates. Petitioner and his associate in the option transaction tried to interest various prospective tenants in a store building that they would erect for a tenant on the optioned premises. They also built a sign on the premises giving their telephone numbers for anyone who would *149 be interested. They were not successful in attracting a tenant. When the survey revealed the necessity for a retaining wall which would cost 25 or 30 thousand dollars and their efforts to attract a tenant were fruitless, they decided to let the option lapse. It is stipulated the option was canceled by the railroad on April 17, 1957 and no part of the consideration paid for the option was recovered by petitioner. In his 1957 joint income tax return with his wife, which was filed with the district director of internal revenue in Brooklyn, petitioner reported the $4,360 loss on the option transaction as an ordinary loss. Respondent's determination that it was a capital loss gives rise to the portion of the deficiency in issue. Opinion Section 1234(a), Internal Revenue Code of 1954, [1] provides: SEC. 1234. OPTIONS TO BUY OR SELL. (a) Treatment of Gain or Loss. - Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which has the same character as the property to which the option or privilege relates *150 has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him). It is admitted here that petitioner suffered a loss upon his purchase of and failure to exercise an option to buy vacant realty. The only issue is as to the character of the loss. Respondent's notice of deficiency determined it was a capital loss "since the property to which the option related would have been a capital asset in your hands if acquired by you * * *." Section 1221 provides the term "capital asset" means the property held by the taxpayer but does not include certain property such as "real property used in his trade or business," section 1221(2). Section 1231, portions of which we have set forth in a footnote [2] provides in effect that losses on the sales of property used in the taxpayer's business shall be ordinary losses - and incidentally that gains on sales of such property shall be capital gains. See Nelson A. Farry, 13 T.C. 8. *151 Respondent argues petitioner was not engaged in the business of operating rental real estate. However, on brief he admits that the record establishes petitioner, during the years involved, was "an architect, with several small real estate investments, [held] variously in individual, partnership and corporate ownership, * * * for incomeproducing purposes." We think the record does not require that the real estate investments be termed "small" but the admission (which is fully justified) is enough to foreclose argument that petitioner was not engaged in acquiring and holding real estate for income-producing purposes. Petitioner's engagement in such business does not depend upon the extensiveness of his real estate holdings. It has long been the rule of this and other courts that one who merely converts his home into income-producing property is using such property in his trade or business of operating rental real estate regardless of the fact that he is engaged in another trade or business. See Leland Hazard, 7 T.C. 372 (and cases therein cited). In the cited case, the taxpayer was a lawyer in Kansas City. When he moved to another city to practice he first rented and *152 later sold at a loss his Kansas City home. We held his Kansas City home was not a capital asset and he was entitled to an ordinary loss. Respondent cites no cases under his first argument that petitioner was not engaged in a business of operating rental real estate. He merely fastens upon petitioner's use of the word "investment" in his testimony describing his real estate ventures and seems to feel the use of that word is an admission by petitioner that his real estate holdings were capital assets. At one point where petitioner said he did not acquire his real estate parcels with intent to sell he said: "I keep [them] as an investment, if you care to call it that." He testified as to the ownership, individually and with associates, of several pieces of business property which were acquired and improved for rental purposes and not for sale and at other places in his testimony he said they were held "as an investment." It is perfectly obvious that petitioner, as a witness, was using the word "investment" as descriptive of his purchases of property for business use in the production of rental income. [3] We know the word "investment" is used in the business world to cover about any *153 purchase of property or property right undertaken for a profit. There is no merit in respondent's first argument. Respondent's second argument is that if petitioner "was in the business of operating rental real estate, nevertheless, the vacant land under option, if acquired, could not have been used in such business, since it was unfeasible to erect rental property thereon." Here respondent cites one case, Beck v. Commissioner, 179 F. 2d 688, involving the issue of the sale of property allegedly used in the taxpayer's business. There we had held in a Memorandum Opinion that an interest in a vacant lot which the taxpayers had inherited was not, under all of the facts, real estate used in their business. In an affidavit they *154 had, in effect, said they at all times held the property for sale only. The Circuit Court reviewed the facts and affirmed our decision. The case is easily distinguished on the facts. We start with the proposition that losses on the sale of property held for rental purposes are losses on the sale of property that was used in the trade or business of the taxpayer within the meaning of section 1231(a). Leland Hazard, supra; Solomon Wright, Jr., 9 T.C. 173. The property does not have to be in actual use as rental property during the year of sale. Carter-Colton Cigar Co., 9 T.C. 219. The phrase "used in the trade or business" means, as was said in Alamo Broadcasting Co., 15 T.C. 534, property that is "'devoted to the trade or business' and includes property purchased with a view to its future use in the business even though this purpose is later thwarted by circumstances beyond the taxpayer's control." Here it is without dispute that petitioner and his associate secured the option with the intention of improving the land with a building to be built for a tenant if one could be secured. They expended money for a survey and a retaining *155 wall and tried to interest prospective tenants. Their efforts failed so they allowed the option to lapse and petitioner suffered the loss in issue. Viewing the option as an acquisition which is what section 1234(a) directs, we hold the property was used in the trade or business of petitioner within the meaning of section 1221(2), and section 1231(a), supra, and the loss on the lapse of the option viewed as a sale was an ordinary loss and not the loss on the sale of a capital asset. Under similar facts in Carter-Colton Cigar Co., supra, we held unimproved realty so purchased had the character of property used in the trade or business during the planning stages. This seems to be the only issue presented. However, since there were other adjustments that are not disputed, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule. - If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *
(b) * * * (1) General Rule. - The term "property used in the trade or business" means * * * real property used in the trade or business, held for more than 6 months * * *. * * *↩
3. This would be well within the broad dictionary definition of the word "investment": Webster's New International Dictionary, 2d Edition, "The investing of money or capital in some species of property for income or profit." We used the same word in describing the taxpayer's rental business in Nelson A. Farry [Dec. 17,079], 13 T.C. 8↩: "* * * he purchased and held these rental properties primarily for investment purposes. * * *"