## BECK v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 9976, 9977.

United States Court of Appeals
Seventh Circuit.

Feb. 6, 1950.

Allin H. Pierce, Chicago, Ill., for petitioner.

Theron L. Caudle, Ellis N. Slack, Lee A. Jackson, Francis W. Sams, S. Walker Shine, Assistants Attorney General, Washington, D. C., for respondent.

Before KERNER, DUFFY, and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This appeal involves taxpayers' income tax liabilities for the year 1943. In their returns taxpayers, under "Net gain (or loss)," each claimed a loss of $14,950 or one-half of $29,900 on the sale of certain unimproved real estate acquired in 1937. The Commissioner asserted that the loss was a long-term capital loss, allowed each taxpayer a loss of $7,475, and made a deficiency assessment. The Tax Court sustained the Commissioner. The sole question is whether the Tax Court erred in holding that the loss suffered in the sale of the real estate was a long-term capital loss deductible only to the extent provided under the provisions of § 117 of the Internal Revenue Code, as amended by § 151 of the Revenue Act of 1942, c. 619, 56 St. 798, 26 U.S.C.A. § 117.

Section 23 of the Revenue Act provides: In computing net income there shall be allowed as deductions: (e) In the case of an individual, (1) if incurred in trade or business—(g) "Losses from sales * * * of capital assets shall be allowed only to the extent provided in section 117." And § 117(a)(1) defines the term "capital assets"

as "property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * real property used in the trade or business of the taxpayers; * * *" and operates with other integrated provisions of § 117 to accord special income tax treatment to properties qualifying as "capital assets." The definition, as noted, expressly excludes from such category "real property used in the trade or business of the taxpayer." Hence, the immediate issue is whether taxpayers were engaged in trade or business in which the real estate was used.

The taxpayers contend that they were engaged in the business of developing real estate for income-producing purposes. They insist that the real estate here in question was devoted to that business, and that upon the sale of the real estate the entire loss was deductible. They rely solely upon a consideration of the possibilities of developing the property to support their contention, and cite among other cases Fackler v. Commissioner, 6 Cir., 133 F.2d 509; Campbell v. Commissioner, 5 T.C. 272; and Carter-Colton Cigar Co. v. Commissioner, 9 T.C. 219.

 The deficiency assessment by the Commissioner imposed upon the taxpayers the burden of proving that the loss sustained was "not a capital loss." To determine whether a taxpayer is engaged in trade or business is a question of fact. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; and Harriss v. Commissioner, 2 Cir., 143 F.2d 279, 281. And in cases such as this, the burden of proving that fact is upon the taxpayers. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, and Deputy, Administratrix, v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. In the instant case the Tax Court concluded that the lot was not real estate used in the trade or business of taxpayers within the intendment of § 117(a)(1) of the Internal Revenue Code. This was a determination of an ultimate fact, which we cannot reverse unless we hold the finding and conclusion clearly erroneous.

The material facts are these. One C. E. Beck, who prior to his death operated motion picture theatres, a hog and cattle ranch in Florida, and managed his real estate for rental and income purposes under the name of C. E. Beck Enterprises, died in November, 1937. At his death taxpayers inherited in equal parts (along with other property) a one-half interest in a lot located at 55th Street and South Shore Drive, Chicago, Illinois. For about a year after Beck's death, in managing the properties inherited from C. E. Beck, taxpayers used the name of C. E. Beck Enterprises, but since that time they have continued the business under the name of R. E. Beck Enterprises. Richard E. Beck is manager of the business. An executive office was maintained and six book accounts were kept, one of which was known as Beck Properties. This account contained four pieces of real estate, including the vacant lot in question which had been held by C. E. Beck and one Kernott since 1918. Kernott, during his lifetime, was the owner of a one-half interest in the lot. Kernott died in 1928, and his interest in the lot passed to a Chicago bank as trustee for Doris Kernott. In 1937 Beck and the trustee listed the lot with a number of real estate agencies for sale at $75,000. After the death of Beck, taxpayers joined the bank-trustee in endeavoring to realize the highest available price for the lot. In 1938 the price was reduced, but at no time to less than $30,000.

In 1938 taxpayers had plans drawn for the purpose of erecting an apartment project on the lot, and R. E. Beck discussed the matter with a real estate man and a contractor, and an effort was made to finance the project. The bank-trustee took the position that it could not and would not participate in the development of an apartment building as proposed by taxpayers, and on January 10, 1939, R. E. Beck obtained from the trustee an option to purchase the Kernott interest for $30,000. The option was never exercised.

A proposition to build row houses on the lot was considered by taxpayers, but nothing was done. A drive-in restaurant was also considered, but a zoning ordinance prevented that project. The plan to finance the erection of an apartment building having failed, and the taxes on the lot for

the years 1940, 1941 and 1942 not having been paid, the taxpayers informed the bank-trustee that they would not pay the taxes, and proposed that the trustee purchase their interest in the lot for $11,000. The offer was rejected. Later R. E. Beck asked what the trustee would give for the lot and was told that the trustee would pay $100 for a deed to the property. Taxpayers accepted the trustee's offer, and on December 24, 1943, conveyed their interests in the lot for $100.

In a sworn protest, protesting against treatment of the loss as long-term capital loss instead of ordinary loss, taxpayers stated that they had "never made any personal use of the property and at no time had any other interest therein than to dispose of it at the best available price." ·

■ It is evident that the taxpayers were not engaged in trade or business in which the real estate was used; they never appropriated the lot to the trade or business of developing property—actually it was not put to any use, for it was vacant and unimproved; nor did they prove that they were in the business of developing unimproved real estate for income-producing purposes. They did no more than consider the idea of improving the property, and that did not constitute a trade or business. At most, they only endeavored to dispose of the lot at the best available price, and investigated the possibilities for improvement of the real estate.

Under these circumstances we would not be warranted in saying that the finding and conclusion of the Tax Court is clearly erroneous. On the contrary, we think the evidence adequately supports the finding that the lot was not real estate used in the trade or business of the taxpayers. Cf. Phipps v. Commissioner, 2 Cir., 54 F.2d 469; Snell v. Commissioner, 5 Cir., 97 F.2d 891; United States v. Robinson, 5 Cir., 129 F.2d 297; Robinson v. Commissioner, 134 F.2d 168; Brown v. Commissioner, 5 Cir., 143 F.2d 468; 512 West Fifty-Sixth Street Corp. v. Commissioner, 2 Cir., 151 F.2d 942; Fahs v. Crawford, 5 Cir., 161 F.2d 315; and Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781. In reaching this conclusion we have not overlooked the cases cited by taxpayers. We think they are inapplicable because they differ on the facts.

Affirmed.

DUFFY, Circuit Judge, (dissenting).

I am unable to distinguish the case at bar from Carter-Colton Cigar Co. v. Commissioner of Internal Revenue, 1947, 9 T.C. 219. The Commissioner of Internal Revenue has announced his acquiescence in that decision. The significance of such acquiescence is that the officers and employees of the Bureau of Internal Revenue are supposed to rely upon that case as a precedent in the disposition of other cases. ·

In the Carter-Colton Cigar Co. case the taxpayer was engaged in the business of distributing tobacco products. In 1926 it purchased a vacant lot with the intention of having a warehouse and store building erected thereon. Plans and specifications were prepared for the building but construction was never commenced because of business conditions. In 1934 the idea of erecting such a building was entirely abandoned. In 1935 the lot was offered for sale, and in 1943 it was finally sold at a loss. The Tax Court held that this loss was not a "capital loss" by reason of the 1942 amendment to § 117(a) (1), Internal Revenue Code. The court said, 9 T.C. pages 220–221:

"Respondent * * * contends that the real estate involved here was a capital asset, since it was never actually *used* in petitioner's trade or business. * * *

* * * * * *

"It is our view that the real property involved here was 'used in the trade or business' of the petitioner, within the meaning of the statute, when it was purchased for the business purpose of causing a building to be constructed thereon to be occupied by the petitioner corporation and steps were taken looking toward the consummation of that plan, to the extent of causing plans to be drawn and specifications to be prepared for use in building on that particular lot. It seems to us that at that time some use, normal for that state of proceedings, had begun to be made of the lot for

the petitioner's business purposes. *Full or maximum use, of course, had not yet been made, and was finally prevented by later-developing circumstances over which petitioner had no control.*"

The Carter-Colton Cigar Co. case was reviewed by the Tax Court as a whole. As stated before, the Commissioner has announced his acquiescence in the decision. In my opinion the case at bar cannot be distinguished from it on any sound legal basis. The business of petitioners was varied, but in large part was that of holding and managing real estate for rental and income purposes. The lot here in question was difficult to handle because the taxpayers owned only an undivided one-half interest. The area of its location was zoned against commercial development other than hotels and apartment buildings. When petitioners acquired their interest in 1937, they took immediate steps looking to the improvement and development of the lot for the production of income. Much effort was given in 1938 to put across a program for the erection of a ‚multiple apartment building. A second project was undertaken in late 1938 and 1939 when drawings were made for an eight-story apartment building containing 108 apartments and 409 rooms. Several large insurance companies were contacted in an unsuccessful attempt to obtain the necessary financing. A third project, the construction of a group of fourteen row houses, followed which in turn was followed by diligent efforts to have a change made in the zoning laws covering the property. Of course after 1940 when our involvement in the war threatened, and after this country went into war, all propositions for a new building had to be abandoned, and 1943 was the year that taxpayers decided to abandon all building plans.

The decision in this case must turn on the last clause in § 117(a)(1) of the Code, which expressly excludes from the category of capital assets "real property used in the trade or business of the taxpayer." This clause was inserted by amendments made to the Revenue Act of 1942 which revised the pre-existing definition of capital assets.

*Because I agree with those authorities which hold that the phrase "used in the trade or business" was intended by Congress to mean the same as "devoted to the trade or business," in my opinion the decision of the Tax Court in each of these cases should be reversed.*