**John E. WALSH, Jr., and Anna D. Walsh, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 8671.

United States Court of Appeals Fourth Circuit.

Argued Oct. 8, 1962.

Decided Jan. 15, 1963.

Patrick J. Head, Washington, D. C. (John L. Ingoldsby, Jr., Washington, D. C., on brief), for petitioners.

Ralph A. Muoio, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks and L. W. Post, Attys., Dept. of Justice, on brief), for respondent.

Before HAYNSWORTH and BRYAN, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge.

The Tax Court of the United States, in the unreported consolidated cases of John E. Walsh, Jr. and Anna D.

Walsh versus Commissioner of Internal Revenue, Docket Nos. 85544 and 86978, held that advances totaling $24,082.18, made by the taxpayer to his son's corporation in 1953, 1954 and 1955, constituted nonbusiness debts and were not fully deductible as such when they became worthless in 1956. The Walshes seek reversal of that decision.

Since the findings of the Tax Court are supported by substantial evidence and are not clearly erroneous, we must affirm.

The taxpayer [1] has been in the paper business for over 40 years. He is president, and chairman of the board, of Walker-Goulard-Plehn Co., Inc., a paper merchandising house in New York City. His income, ranging between $50,000 and $100,000 per year, is derived entirely from commissions on sales of paper made by him in his company's name.

In November 1952, Engineering Enterprises, Inc. was incorporated under the laws of Virginia. Taxpayer's son David was the sole stockholder. At the time David organized Engineering Enterprises, Inc., he had a bachelor's degree in electrical engineering and had done graduate work in physics. He is a registered professional engineer in the District of Columbia. Since 1948 he has been a member of the technical association of the pulp and paper industry.

Since 1952 the son, through his wholly owned corporation, has been a paper consultant to his father. The annual retainer for this service has been claimed and allowed as ordinary and necessary business expenses of the father, except for the year 1957.[2]

During 1953, 1954 and 1955, taxpayer made advances to Engineering Enterprises in the amounts of $8,213.90, $5,100.41 and $11,767.87, respectively. These advances were evidenced by non-interest bearing promissory notes executed by David as president of Engineer-

ing Enterprises, Inc., payable to the order of taxpayer one year after date.

At the end of each of the years 1953, 1954 and 1955, the taxpayer made an informal demand on David, as president of Engineering Enterprises, for payment of the notes, but each time David persuaded his father to wait awhile longer with the hope that certain contracts Engineering Enterprises had would turn out to be profitable.

In November 1955, Engineering Enterprises was awarded a contract by the United States Weather Bureau for the production of 100 retransmitters and recorders for a total contract price in excess of $160,000. The taxpayer and Morris Housen, president of Irving Paper Company, were the indemnitors on the $40,000 performance bond, required by the contract.

It was because of this contract that taxpayer had agreed not to make a formal demand for the repayment of the advances made in 1953, 1954 and 1955, totaling $25,082.18, and, as a result thereof, that taxpayer made additional advances of $19,022.64 to Engineering Enterprises during 1956.

The corporation experienced difficulties during 1956 in performing the Weather Bureau contract, and on August 30, 1956, the Weather Bureau threatened to cancel unless positive production, in accordance with the Weather Bureau's specifications and requirements, was evidenced within 30 days. None of the instruments under contract had been delivered by December 1956, and nothing had been paid by the Weather Bureau to Engineering Enterprises by that date.

In view of the difficulties David and Engineering Enterprises were having with the Weather Bureau, taxpayer became quite concerned regarding the advances he had made, and on December 13, 1956, he wrote David a letter stating

1. Anna D. Walsh, his wife, is a party only because joint returns were filed.

2. The Tax Court, in its opinion in this case, reversed the Commissioner and allowed the claim as a necessary business expense in 1957.

that he was concerned with the moneys "you owe me for 1953, 1954 and 1955," and that he would like David's response as soon as possible. As to the 1956 advance, the taxpayer stated, "I fully believe that before the end of 1957, you'll be able to refund me, en toto, the $19,022.64 out of the WB contract operations."

On December 21, 1956, David, as president of Engineering Enterprises, offered the taxpayer "A composition of debts for the years 1953, 1954 and 1955 in a note of Engineering Enterprises, Inc., (personally endorsed by me) in the amount of $1,000.00 (demand tenure), as full payment for all money loaned as of this date, for the above period." Taxpayer accepted this offer.

The taxpayer thereafter, in 1956, determined that $24,082.18 of the advances made by him to Engineering Enterprises during 1953, 1954 and 1955 were worthless and deducted the amount on his tax return for 1956 as "loss from business bad debt." The Commissioner disallowed the deduction on the ground the taxpayer had failed to establish that the amount allegedly due from Engineering Enterprises, Inc. constituted a proper bad debt deduction, for the taxable year 1956 under the provisions of Section 166 of the Internal Revenue Code of 1954.

Notwithstanding the Weather Bureau's threat in 1956 to cancel its contract with Engineering Enterprises, it continued to negotiate with the corporation and the contract was ultimately completed.

Taxpayer, in an attempt to save his credit standing in the paper industry, to prevent loss on the performance bond for which he and Housen were indemnitors, and to attempt recoupment on the notes held by him from Engineering Enterprises, by completion of the Weather Bureau contract, made additional loans from his own funds and from extensions of credit of other parties to Engineering Enterprises for the years 1957, 1958,

1959 and 1960, in amounts of $32,163.77, $14,527.92, $20,386.08, and $35,841.61, respectively.

Upon these findings the Tax Court concluded the advances by the taxpayer to Engineering Enterprises during the years 1953, 1954 and 1955 created a real indebtedness and were not gifts, and held the advances were nonbusiness rather than business debts.

The question of whether a bad debt is a business or nonbusiness debt has traditionally been considered an issue of fact to be determined in each particular case. Determination has been made difficult because the Code, the Regulations and the decisions fail to define satisfactorily the term "trade or business." Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. Past decisions are helpful only insofar as the factual patterns resemble the case at hand.

Section 1.166–5(b), Treasury Regulations on Income Tax (1954 Code) says the question

"  *  *  * is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception provided by that subparagraph  *  *  *."

Gauged by these standards, the debt was nonbusiness.

Clearly, the "loss" was not directly connected with or pertaining to the taxpayer's trade or business.[3] The taxpayer loaned the money from his personal funds because he was convinced his son's corporation would succeed and that he would be repaid, at least at the same rate banks charge for similar service on loans.[4]

Nevertheless he contends these loans were so connected with his business that they qualified as a "bad business debt"

3. Taxpayer's business was that of "selling paper on a commission basis."

4. Paraphrased from taxpayer's letter of December 13, 1956.

when they became worthless. More specifically, the taxpayer contends that the loans were made in order that Engineering Enterprises might extend its research and development activities in the field of paper, and by so doing be in a better position to give taxpayer technical advice from which he would profit.

A somewhat analogous contention was disposed of by this Court in Gulledge v. Commissioner, 4 Cir., 249 F.2d 225, certiorari denied 356 U.S. 959, 78 S.Ct. 995, 2 L.Ed.2d 1066, where a taxpayer-farmer made loans to a peanut corporation which was established by taxpayer and other peanut growers in the area in an attempt to get better prices for peanut crops. In affirming the Tax Court's finding that the loans resulted in nonbusiness bad debts, this Court said:

> "It is true that the taxpayer and the other stockholders were induced to contribute to the capital of the corporation in the hope that the establishment of a peanut mill in their neighborhood would enable them to secure a better price for their peanuts, and hence it may be said in a broad sense that the business of the farmers and the business of the corporation were related. It does not follow, however, that the business of the corporation was incidental to the business of the taxpayer and that the loss of the money loaned by him to the corporation was incurred in the operation of his farms. The two businesses were separate and distinct * * *. The corporation was

not merely a department of the business of his farm. * * * * "

The possibility that Engineering Enterprises might have developed a machine which would be useful in the paper industry is rather far removed from the taxpayer's selling activities, and we can not say that the Tax Court committed "plain error"[5] in finding that the loans were not proximately related to the taxpayer's trade or business.

The cases[6] relied upon by the taxpayer do not require a different conclusion in view of their differing facts.

After the Tax Court's opinion had been filed, the taxpayer moved that Court to reconsider its findings and for permission to amend the pleadings to conform to the evidence. The Tax Court denied the motion and the taxpayer claims error.

The taxpayer took the position in his motion[7] to reconsider that the amounts advanced to Engineering Enterprises in 1956 and 1957 were deductible either as ordinary and necessary business expenses under Section 162(a)[8] of the Internal Revenue Code of 1954, or as ordinary and necessary expenses paid or incurred for the management, conservation or maintenance of property held for production of income under Section 212[9] of the Code. These contentions are without merit, and the Court did not abuse its discretion in denying the motion to reconsider.

It is clear from the record that the amounts advanced by the taxpayer to Engineering Enterprises were loans and not ordinary and necessary expenses paid

---

5. Rollins v. Commissioner, 4 Cir., 276 F.2d 368.

6. Robert Cluett, III, 8 T.C. 1178; Stuart Bart, 21 T.C. 880; Tony Martin, 25 T.C. 94; J. T. Dorminey, 26 T.C. 940; Mays v. Commissioner, 6 Cir., 272 F.2d 788.

7. Taxpayer again raised the question whether the 1953, 1954 and 1955 loans were business or nonbusiness debts.

8. "§ 162. Trade or business expenses
   "(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred dur-

ing the taxable year in carrying on any trade or business, * * *."

9. "§ 212. Expenses for production of income
   "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
   "(1) for the production or collection of income;
   "(2) for the management, conservation, or maintenance of property held for the production of income; * * *."

in carrying on any trade or business, deductible under Section 162(a), supra. Neither are they deductible as ordinary and necessary expenses paid for the management, conservation or maintenance of property held for the production of income under Section 212 of that Code.

The 1956 advance was characterized by the taxpayer as a loan.[10] The advances made in 1957 and onward were loans. The taxpayer so testified.[11]

The 1953, 1954 and 1955 loans were made to help his son's corporation succeed, and with the hope of being repaid with interest; the 1956 loan was made on the strength of the Weather Bureau contract. The 1957 and onward loans were made in an attempt to save his credit standing in the paper industry, to prevent loss on the performance bond for which he and Housen were indemnitors, and to attempt the recoupment of notes held by him from Engineering Enterprises.

The money, thus advanced by the taxpayer, was in fact "loans," and deductions for losses are not available with respect to loans. Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed. 2d 144.

Further, there is no justification or basis for consideration of taxpayer's loss under the general loss provisions of Section 165(c) (2).[12]

"* * * Congress has legislated specially in the matter of deductions of nonbusiness bad debt losses, i. e., such a loss is deductible only as a short-term capital loss. * * *" See Putnam v. Commissioner, supra, and cases cited therein.

The holding in the 1961 tax case, Pepper v. Commissioner, 36 T.C. 886, does not alter our conclusion herein reached. The facts therein are readily distinguished from the present case.

The judgment of the Tax Court is Affirmed.

10. He so contends in his letter of December 12, 1958.

11. "Q. And then * * * after the year 1956, did you give other loans or make other payments to Engineering Enterprises, Inc.?
"A. I made further loans, for a purpose."

12. Internal Revenue Code of 1954:
"§ 165. Losses
"(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
* * * * *
"(c) Limitations on Losses of Individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—
* * * * *
"(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business;
* * *."