ROBERT P. GROETZINGER, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 2028–82.     Filed May 24, 1984.

Robert P. Groetzinger, pro se.
*James Gehres,* for the respondent.

DRENNEN, *Judge*: Respondent determined a deficiency of
$2,521.89 in petitioner's Federal income tax for the year 1978.
The issue for decision is whether petitioner was in the trade or
business of gambling during 1978. Resolution of this issue
determines whether petitioner is subject to the minimum tax
on items of tax preference under section 56.[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The
stipulation of facts and exhibits attached thereto are incorpo-
rated herein by this reference.

Petitioner Robert P. Groetzinger resided in Peoria, Ill., at
the time he filed his petition in this case. Petitioner timely
filed an individual income tax return for his 1978 taxable year.

Prior to February 1978, petitioner was employed in Peoria
by Gerstenslager Co., a manufacturer of trucks and mobile
libraries. He had worked there for about 20 years in sales and
market research.

In February of 1978, petitioner's position with Gerstenslager
Co. was terminated. Since then, he has been a full-time
gambler, devoting virtually all his time to parimutuel wager-
ing on dog races. Since losing his job, petitioner has had no
profession or employment other than gambling. Aside from his
gambling winnings, petitioner's only source of income has
been interest, dividends, and sales of investments.

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect in
1978.

During 1978, petitioner devoted virtually all of his time to parimutuel wagering on dog races at tracks in Florida and Colorado.[2] He also attended several horseraces. He went to the track 6 days a week, and attended 326 separate performances. On some days, he attended both matinee and evening performances.

Petitioner typically arrived at the racetrack at about 1 p.m. and departed about 11:30 p.m. When not at the track, he spent a substantial amount of time studying racing forms, programs, and other materials in order to determine what bets to place. He did not bet on every race, and often modified his betting strategy at the track, based on the "odds" for a particular race. Petitioner devoted from 60 to 80 hours per week to these endeavors.[3]

Petitioner never placed bets on behalf of others, sold tips to other bettors, or collected commissions for placing bets. He gambled solely for his own account.

Petitioner kept detailed records of his wagering. At the end of each day, or sometimes after each performance, he recorded his net winnings or net losses in a journal.

In 1978, petitioner bet a total of $72,032. His total winnings were $70,000. His net loss from his gambling in 1978 was $2,032. Petitioner received income from other sources totaling $6,498.[4]

On his Federal income tax return, petitioner reported as income only the $6,498 he received from nongambling sources. He did not deduct the $2,032 net loss from gambling in arriving at "adjusted gross income" on line 31 of his Form 1040. However, he did report the gambling loss on Schedule E of his Form 1040, entitled "Supplemental Income Schedule." Petitioner claimed no itemized deductions, but rather computed his tax liability from the tax tables, which allowed him a $2,200 "zero bracket amount."

---

[2]Since losing his job, petitioner has generally migrated between Florida and Colorado, residing in apartments, while maintaining his legal residence in Peoria, Ill.

[3]Petitioner testified: "I buy my program in the morning, or buy it the night before at the track. I go home and work on it. I work 60-80 hours a week, and [sic] trying to make a living playing dogs. I lost my job when I was 58 years old, and I'd been playing some dogs then. So I said well, I'll give it a try. It doesn't look like I'll be able to make it because this is too tough."

[4]Petitioner received interest of $1,330, dividends of $1,337, taxable gain on the sale of stock (after sec. 1202 deduction) of $1,507, wages (earned prior to the termination of his job) of $1,323, and "commissions" (payment for services rendered to his former employer in connection with a survey) of $1,000.

In his notice of deficiency, respondent determined that petitioner's $70,000 of gambling winnings constitute additional income, and that $70,000 of petitioner's gambling losses,[5] while deductible to the extent of petitioner's gambling winnings, constitute itemized deductions (deductions from adjusted gross income). The effect of this determination was to subject petitioner to the minimum tax on "items of tax preference" under section 56. Respondent computed a minimum tax in the amount of $2,141.89, resulting in the deficiency herein.[6]

## OPINION

The sole issue presented for decision is whether petitioner's gambling activities constitute a "trade or business" within the meaning of section 62(1). If so, his gambling losses are deductible from gross income in arriving at adjusted gross income,[7] and as such do not constitute "items of tax preference" for the purposes of the minimum tax imposed by section 56.[8] It is not disputed that petitioner during 1978 was engaged full time in parimutuel wagering on dog races, had no other employment during that period, gambled solely for his own account, and devoted an extraordinary amount of time and effort to his gambling with a view to earning a living from such activity. In *Ditunno v. Commissioner,* 80 T.C. 362 (1983), appeal dismissed (6th Cir., Sept. 15, 1983), we held on nearly identical facts that such a full-time gambler was in the trade or business of gambling, so that his losses were not items of tax

---

[5]Sec. 165(d) allows a deduction for wagering losses only to the extent of the winnings from such transactions.

[6]Certain other minor adjustments were made, as a result of the change of the method by which petitioner's tax liability was computed (itemized deductions rather than tax tables). None of these other adjustments are in dispute. Petitioner concedes that if he is subject to the minimum tax, respondent correctly computed the amount of the tax.

[7]Sec. 62 defines "adjusted gross income" as gross income minus certain deductions specified therein. Sec. 62(1) describes the trade and business deductions as "the deductions allowed by this chapter * * * which are attributable to a trade or business carried on by the taxpayer."

[8]Sec. 56, as effective in 1978, imposed a minimum tax on "items of tax preference," which included "adjusted itemized deductions." Sec. 57(a)(1). Sec. 57(b)(1) broadly defined "adjusted itemized deductions" to be "deductions for the taxable year," but specifically excluded certain deductions, including deductions which are allowable in arriving at adjusted gross income. Sec. 57(b)(1)(A). Under sec. 62(1), the trade and business deductions fit into this exception. The result of this statutory scheme is to shield from the minimum tax, deductions which are attributable to a trade or business.

preference for the purposes of computing the minimum tax.[9] In *Ditunno,* we rejected the proposition that to be engaged in a trade or business, one must hold himself out to others as offering goods or services.[10] Rather, after thoroughly reviewing the extensive case law in this area, we concluded: "The proper test of whether an individual is carrying on a trade or business requires an examination of all the facts involved in *each* case." *Ditunno v. Commissioner, supra* at 366–367.

Factually this case is fundamentally indistinguishable from *Ditunno* and an examination of all the facts in this case leads us to conclude that, during 1978, petitioner was also in the trade or business of gambling. However, the U.S. Court of Appeals for the Second Circuit recently rejected the position we adopted in *Ditunno.* In *Gajewski v. Commissioner,* 723 F.2d 1062 (2d Cir. 1983), revg. and remanding a Memorandum Opinion of this Court, the Court held that in order to be engaged in a trade or business, "a taxpayer must, as a minimum, have held himself out to others as offering goods or services." Thus, the Court found a full-time gambler, whose extensive parimutuel wagering on jai-alai provided his only income, not to be engaged in a trade or business because he gambled solely for his own account and did not hold himself out to others as offering goods or services.

We must decide in this case whether to adhere to our Court-reviewed decision in *Ditunno* or modify our position in accordance with the Second Circuit's ruling in *Gajewski.*[11] We note in passing that this is unlikely to be the last word on this

---

[9]See also *Cull v. Commissioner,* T.C. Memo. 1983–80, on appeal (6th Cir., Aug. 29, 1983); *Gajewski v. Commissioner,* T.C. Memo. 1983–133, revd. 723 F.2d 1062 (2d Cir. 1983); *Nipper v. Commissioner,* T.C. Memo. 1983–644, on appeal (11th Cir., Jan. 18, 1984).

[10]In so holding, we overruled *Gentile v. Commissioner,* 65 T.C. 1 (1975), in which we had held that a gambler in similar circumstances was not engaged in a trade or business because he did not hold himself out to others as offering goods or services. *Gentile* involved the self-employment tax, so the taxpayer argued that his gambling income was not from a trade or business, while respondent argued that it was.

[11]In *Lawrence v. Commissioner,* 27 T.C. 713 (1957), in discussing the procedure the Tax Court should follow when an issue previously decided by it has been reversed by a Court of Appeals, and is before it again, we said: "Clearly, it [Tax Court] must thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, the obvious procedure is to follow the higher court. But, if it is still of the opinion that its original result was right, a court of national jurisdiction to avoid confusion should follow its honest beliefs until the Supreme Court decides the point." The Tax Court endorsed this philosophy in *Golsen v. Commissioner,* 54 T.C. 742 (1970), except where appeal of the current case lies to the reversing Court of Appeals and to that Court alone, in which event, the Tax Court will follow the decision of that Court. The *Golsen* rule is not applicable here.

issue, as appeals are pending in two other similar cases.[12] With all due respect to the Second Circuit, whose opinion we have considered thoroughly, we are not persuaded that the case law justifies a departure from the position we announced so recently in *Ditunno*.[13]

Our reasons for rejecting the "goods or services" test are explained thoroughly in our opinion in *Ditunno*, and we see no need to repeat that discussion here. However, in light of the decision in *Gajewski*, we feel compelled to examine several points raised by the Second Circuit and articulate the reasoning that leads us to a different conclusion. In addition, we think it is appropriate at this juncture to discuss more thoroughly certain cases involving active traders of securities, which we find to be strong support for our position.

The crux of the issue is whether a passage in Justice Frankfurter's concurring opinion in *Deputy v. du Pont*, 308 U.S. 488, 499 (1940), in which he described a trade or business as "holding one's self out to others as engaged in the selling of goods and services," should be regarded as establishing an absolute requirement that must be satisfied in order for a taxpayer to be engaged in a trade or business.[14] In answering this question in the affirmative, the Second Circuit accorded little weight to the Supreme Court's decision in *Higgins v. Commissioner*, 312 U.S. 212 (1941), in which the Court said "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." The Second Circuit did not attempt to reconcile its adoption of the "goods or services" test with *Higgins* and other contemporaneous decisions of the Court involving the trade or business issue.

In *Deputy v. du Pont, supra*, the case in which Justice Frankfurter's concurring opinion appeared, the majority did not even address the question of whether a trade or business existed.[15] However, only 1 year later, when squarely faced

---

[12]See cases cited at note 9.

[13]See also *Hornaday v. Commissioner*, 81 T.C. 830 (1983).

[14]For the sake of brevity, we shall hereinafter refer to Justice Frankfurter's proposal as the "goods or services" test. In so doing, we do not mean to de-emphasize the "holding out" element of the test, which we view as crucial to the understanding and application of this concept. See discussion of "trader" cases, *infra*.

[15]The Court held that assuming the taxpayer's investment-related activities constituted a trade or business, the expenses in question were not "ordinary and necessary" within the meaning of sec. 23(a) of the Revenue Act of 1928, ch. 852, 45 Stat. 799.

with the meaning of "trade or business," the Court ignored the "goods or services" requirement proposed by Justice Frankfurter and announced the more general factual approach quoted above. *Higgins v. Commissioner, supra* at 217. In *Higgins,* the Court was faced with various lower court interpretations of the meaning of "trade or business," in addition to Justice Frankfurter's "goods or services" test, but apparently found none of them to be adequate.[16] See *Ditunno v. Commissioner, supra* at 367–368. Shortly thereafter, the Supreme Court reiterated the overall factual approach in *United States v. Pyne,* 313 U.S. 127 (1941), and *City Bank Farmers Trust Co. v. Helvering,* 313 U.S. 121 (1941), and did not mention the "goods or services" test.

Our rejection of the "goods or services" requirement in *Ditunno* followed from our conclusion that, given this judicial context, *Higgins* is properly viewed as the controlling Supreme Court precedent on the trade or business issue. See *Ditunno v. Commissioner, supra* at 366–369. In *Higgins,* the Court was faced with the task of defining the contours of the "trade or business" concept in the face of varying interpretations by the lower courts. In announcing a review of all the facts approach, the Court implicitly rejected various other attempts, including that of Justice Frankfurter, to formulate a precise definition of the term. The Second Circuit, however, in adopting the "goods or services" requirement in *Gajewski,* did not attempt to reconcile that result with *Higgins* and other decisions of the Supreme Court that prescribe the more general facts approach. Rather, the Court in *Gajewski* embraced Justice Frankfurter's proposed test and based its decision primarily on lower court decisions which have cited the concurring opinion in *Deputy v. du Pont.*[17] While we do not dispute the importance

---

[16]Justice Frankfurter's "goods or services" proposal was clearly before the Court in *Higgins v. Commissioner,* 312 U.S. 212 (1941), as the lower court relied in part on his concurring opinion in *Deputy v. du Pont,* 308 U.S. 488, 499 (1940). See *Ditunno v. Commissioner,* 80 T.C. 362, 368 (1983). The Court's implicit rejection of that test is all the more significant given the factual similarity of *Higgins* and *Deputy v. du Pont*; both involved investors who incurred expenses related to the management of their securities portfolios. Thus, the "goods or services" test, having been proposed by Justice Frankfurter only 1 year earlier on similar facts, would have provided a convenient ground for the decision in *Higgins* had the Court wanted to adopt it.

[17]Although the Court in *Gajewski* cited *Snow v. Commissioner,* 416 U.S. 500 (1974), as "implicit approval" by the Supreme Court of the "goods or services" requirement, we do not think that a fair reading of that opinion suggests that the Court intended by its reference to Justice Frankfurter's remarks to do more than compare the relatively liberal allowance provisions of sec. 174 (allowing current deductions for certain research or experimental expenditures "*in connection with*" a trade

of the lower court decisions which have shaped the meaning of "trade or business," we think the Second Circuit's approach unduly discounts the importance of these contemporary Supreme Court decisions in evaluating the cogency of Justice Frankfurter's proposed test.

Although the Court in *Gajewski* stated that "A number of other courts have also implicitly or explicitly adopted the 'goods or services' requirement," the attempt to support this proposition with specific examples is not persuasive. An examination of the case law reveals that, while Justice Frankfurter's language has been cited frequently as a factor to be considered in resolving the "trade or business" question, there are few instances where the "goods or services" notion has been adopted unambiguously as an absolute requirement or, in the words of the Second Circuit, a "minimum standard."[18] Few courts, in fact, have treated the issue with any consistency, thus calling into question some of the cases relied on in *Gajewski* and leaving to conjecture how the question here presented would be resolved in other circuits.[19] We note, however, that the Seventh Circuit, to which this case is appealable, has applied the facts and circumstances test when

---

or business) with the generally more restrictive requirements of sec. 162 (expenses allowed only "*in carrying on*" a trade or business). See *Ditunno v. Commissioner,* 80 T.C. at 370. We also note that in *Snow,* the Court referred to Justice Frankfurter's test as having been "adumbrated."

[18]Two of the cases cited by the Court in *Gajewski* illustrate this point. In *Stanton v. Commissioner*, 399 F.2d 326 (5th Cir. 1968), the Court cited the "goods or services" language, but focused mostly on the continuity and regularity of the taxpayer's activities in finding that an inventor was not engaged in a trade or business. See also *Steffens v. Commissioner*, 707 F.2d 478 (11th Cir. 1983) (implicitly approving "goods or services" requirement, but focusing on continuity and frequency of activity and citing *Ditunno* with approval). In *Weiberg v. Commissioner*, 639 F.2d 434 (8th Cir. 1981) (cited in *Gajewski)*, the Court, in holding that a full-time student was not engaged in a trade or business, merely cited *Deputy v. du Pont* without discussion. We think such passing references to Justice Frankfurter's opinion are inadequate to support the proposition that those courts have adopted the "goods or services" test as an absolute requirement, or "minimum standard," in all circumstances.

[19]For example, the Third Circuit seemed to endorse the "goods or services" requirement in *McDowell v. Ribicoff,* 292 F.2d 174 (1961) (a case cited in *Gajewski)*, but later, in *Commissioner v. Moffat,* 373 F.2d 844 (1967), followed *Higgins* in stating that whether a trade or business exists must be determined from all the facts and circumstances. Other circuits exhibit this inconsistency, which in some cases substantially lessens the precedential value of cases relied on by the Court in *Gajewski*. Fourth Cir.: compare *Helvering v. Highland,* 124 F.2d 556 (1942) (citing *Deputy v. du Pont* with approval), with *Commissioner v. Nubar,* 185 F.2d 584 (1950) (applying *Higgins* test in finding "trader" of securities to be in trade or business), and *Walsh v. Commissioner,* 313 F.2d 389 (1963) (citing *Higgins)*. Sixth Cir.: compare *Main Line Distributors, Inc. v. Commissioner,* 321 F.2d 562 (1963) (citing *Higgins)*, with *Snow v. Commissioner,* 482 F.2d 1029 (1973), revd. 416 U.S. 500 (1974) (citing *Deputy v. du Pont)*. Ninth Cir.: compare *Daily Journal Co. v. Commissioner,* 135 F.2d 687 (1943) (citing *Deputy v. du Pont)*, with *Purvis v. Commissioner,* 530 F.2d 1332 (1976) (applying *Higgins* test to "trader" of securities); *United States v. Keeler,* 308 F.2d 424 (1962); and *Wineberg v. Commissioner,* 326 F.2d 157 (1963) (citing *Higgins)*.

faced with the "trade or business" issue. See *Beck v. Commissioner*, 179 F.2d 688 (7th Cir. 1950); *Simonsen Industries v. Commissioner*, 179 F.2d 688 (7th Cir. 1950); *Simonsen Industries v. Commissioner*, 243 F.2d 407 (7th Cir. 1957); *International Trading Co. v. Commissioner*, 275 F.2d 578 (7th Cir. 1960). But see *Hope School v. United States*, 612 F.2d 298 (7th Cir. 1980) (citing *Deputy v. du Pont* without discussion but appearing to apply a facts and circumstances approach).

The Second Circuit in *Gajewski* criticizes the "facts and circumstances" approach as not describing a standard, and refers to it as a "nontest." Inherent in this argument is the assumption that the term "trade or business" is susceptible of a precise, determinative standard. However, throughout the 66 years the term has appeared in the Code,[20] neither Congress nor the Commissioner has ever attempted to articulate such a standard, and the judicial history of the term "trade or business" reveals it to be an amorphous creature that has resisted attempts to define it with precision; what may be a decisive factor in one case is unimportant to another. We think that the very inability to distill from the case law a precise test or definition of a "trade or business" supports our conclusion that the question is inherently one of fact, as the Supreme Court announced in *Higgins*. As one court stated: "The term 'trade or business' appears in the Tax Code in over sixty places and by necessity must obtain of a functional definition according to the context in which the question arises." *Steffens v. Commissioner*, 707 F.2d 478, 482 (11th Cir. 1983).

We also find support for our position in a line of cases which establishes that trading securities for one's own account can constitute a trade or business if the trading is sufficiently frequent and substantial. While we alluded to some of these cases in *Ditunno*, we believe that their close similarity to the instant case warrants further discussion.

It has been clear since *Higgins* that a mere investor is not engaged in a trade or business by virtue of his holding of securities to produce income and capital appreciation. See also *Whipple v. Commissioner*, 373 U.S. 193 (1963). Even prior to its decision in *Higgins*, however, the Court indicated that a

---

[20]The term "trade or business" first appeared in the Revenue Act of 1918. See 1 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 20.1.2 n. 12 (1981).

taxpayer who "devotes the major portion of his time to *speculating* on the stock exchange may treat losses thus incurred as having been sustained in the course of a trade or business." *Snyder v. Commissioner*, 295 U.S. 134 (1935) (emphasis added). Since *Snyder*, various courts have developed the distinction between "investing" and "speculating" or "trading." It is now clear that an active "trader,"[21] who looks to profit from short-term market swings and does not simply hold securities for long-term appreciation, will be deemed to be engaged in a trade or business provided that his trading is frequent and substantial. *Fuld v. Commissioner*, 139 F.2d 465 (2d Cir. 1943); *Commissioner v. Nubar*, 185 F.2d 584 (4th Cir. 1950); *Levin v. United States*, 220 Ct. Cl. 197, 597 F.2d 760 (1979). Compare *Purvis v. Commissioner*, 530 F.2d 1332 (9th Cir. 1976); *Moller v. United States*, 721 F.2d 810 (Fed. Cir. 1983).[22] We previously described this distinction between "investing" and "trading" as follows:

in the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis. [*Liang v. Commissioner*, 23 T.C. 1040, 1043 (1955).][23]

The Court of Appeals for the Federal Circuit recently reviewed the law in the area and summarized:

In determining whether a taxpayer who manages his own investments is a trader, and thus engaged in a trade or business, relevant considerations are the taxpayer's investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and regularity of the taxpayer's securities transactions. * * * [*Moller v. United States*, 721 F.2d at 813.]

We are unable to discern any meaningful distinction between the so-called "active trader" of securities and the full-time gambler such as petitioner in this case. The essential nature of these activities is identical; to state it simply, one gambles on stocks, the other on dogs. Both bet, or trade, solely

---

[21]In its opinion in *Gajewski*, the Second Circuit uses, on more than one occasion, the term "trader" in conjunction with the term "businessman."

[22]See also *Connelly v. Commissioner*, T.C. Memo. 1982–644.

[23]This test for distinguishing between investing and trading was adopted by the Ninth Circuit in *Purvis v. Commissioner*, 530 F.2d 1332, 1334 (9th Cir. 1976). See also *Moller v. United States*, 721 F.2d 810 (Fed. Cir. 1983).

for their own account and do not enter into any transactions with specific individuals; rather, their profits or losses depend solely upon their ability to predict outcomes in an impersonal and (presumably) nonmanipulatable market or parimutuel event.

We find it hard to reconcile the "active trader" cases with the proposition announced in *Gajewski* that the "goods or services" requirement is a "minimum standard" for the existence of a "trade or business." Surely it cannot seriously be argued that the trader of securities "holds himself out to others as engaged in the selling of goods or services" simply by virtue of his transactions in the stock market. See *Gajewski v. Commissioner, supra* at 1067 n. 8. The fact that theoretically the market "matches" the seller's transaction with that of some anonymous buyer does not, in our view, satisfy the meaning of "holding one's self out." The same rationale could be applied to petitioner, whose bet at the dog track is offset by that of some other anonymous gambler who places his money on a different dog.[24] Yet, it seems self-evident that neither the gambler nor the securities trader can be described as "holding himself out" within the meaning of Justice Frankfurter's opinion. The securities trader would not appear to fall within the Second Circuit's interpretation of a "trade or business" as "a commercial activity in which a person seeks to earn a livelihood by furnishing goods or services to others for a price." *Gajewski v. Commissioner, supra* at 1066.

Our view that the "trader" cases cannot be reconciled with the "goods or services" requirement is confirmed by the fact that the courts in those cases apply a general "facts and circumstances" approach, as directed by *Higgins*, and focus not on the taxpayer's *sales* of securities *to others* but rather on the frequency, extent, and regularity of his *trading* by which he capitalizes on short-term market swings. See *Moller v. United States, supra; Purvis v. Commissioner, supra.* In fact, the only court to consider Justice Frankfurter's "goods or

---

[24]The parimutuel system in effect performs the same function as the stock exchange in coordinating the transactions of these independent bettors. By placing a bet, the gambler is simultaneously "purchasing" a chance on one dog, and "selling" to another bettor a chance on the other dogs. The "price" of these various chances is reflected by the constantly changing "odds" on the different dogs, which is simply a method of expressing, in quantitative terms, the aggregate preferences of the pool of bettors. In this sense, the "odds board" at the track plays the role of the ticker tape on the floor of the stock exchange.

services" test in this context concluded that "those remarks do not apply to the present situation." *Fuld v. Commissioner, supra* at 468.[25]

Finally, we do not think that the amendments to the minimum tax provisions in 1982 have any relevance to the issue before us.[26] The provision which exempts gambling losses from the alternative minimum tax, section 55(e)(1)(A), was added in conference, and the legislative history does not illuminate the reasons for its addition. In any event, we note that this legislation preceded our decision in *Ditunno*, and as such could represent only a reaction to prior cases such as *Gentile v. Commissioner*, 65 T.C. 1 (1975), which held full-time gamblers not to be engaged in a trade or business. It is thus not possible to draw any inference as to whether Congress viewed those cases as correctly or incorrectly interpreting the law; merely that it perceived such a *result* to be inequitable.

For the reasons expressed above, we adhere to our decision in *Ditunno v. Commissioner, supra,* that in determining whether a taxpayer's activities constitute a trade or business, the taxpayer does not have to meet the "goods or services" test to prevail. Rather, such an inquiry requires a broader examination of all the facts involved in each case. Under the latter approach, it is clear that petitioner's gambling activities were sufficiently regular, frequent, active, and substantial to constitute a trade or business. Accordingly,

*Decision will be entered for the petitioner.*

Reviewed by the Court.

---

[25]We are not convinced by the Second Circuit's effort, in a one-sentence footnote, to reconcile its adoption of the "goods or services" requirement with the trader cases.

[26]In the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, sec. 201(a), 96 Stat. 411, Congress repealed the add-on minimum tax for individuals, and broadened the alternative minimum tax under sec. 55. Like the old minimum tax, the alternative minimum tax base includes only "adjusted gross income," thus excluding from the tax the trade or business deductions allowable under sec. 62(1). Sec. 55(b). In addition, certain "alternative tax itemized deductions" are allowed. Sec. 55(b)(1)(B), sec. 55(e)(1). Included in these deductions are wagering losses allowed by sec. 165(d). Sec. 55(e)(1)(A). The inclusion of wagering losses in this provision, which effectively exempts such losses from the alternative minimum tax, occurred during conference, and the legislative history is silent with respect to this provision.

DAWSON, FAY, SIMPSON, GOFFE, WILES, WILBUR, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, CLAPP, SWIFT, and JACOBS, *J.J.*, agree with the majority opinion.

---

STERRETT, *J.*, concurring: I agree with the majority opinion in the instant case by reason of the doctrine of stare decisis and for that reason alone.

---

CHABOT, *J.*, dissenting: For the reasons set forth in Judge Tannenwald's dissenting opinion in *Ditunno v. Commissioner*, 80 T.C. 362, 372–377 (1983), I respectfully dissent.

COHEN, *J.*, agrees with this dissent.