CHARLES C. RUSNAK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rusnak v. Commissioner
Docket No. 10631-86.
United States Tax Court
T.C. Memo 1987-249; 1987 Tax Ct. Memo LEXIS 250; 53 T.C.M. (CCH) 835; T.C.M. (RIA) 87249; May 12, 1987. *250 Joseph H. Blackwell, for the petitioner. Carol A. Szczepanik, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1982 in the amount of $953. The issue is whether petitioner was in the trade or business of gambling. FINDINGS OF FACT Some of the stipulated facts and exhibits are incorporated by this reference. When the petition herein was filed petitioner resided in North Randall, Ohio. On February 6, 1975, petitioner won $300,000 in the Ohio lottery, payable over 20 years at $15,000 per year. On his income tax return for 1982 petitioner reported wages of $923.77, [1] interest income of $14.47 and $6,664 in unemployment compensation benefits and nontaxable dividends which amounts are not in issue. On Schedule C attached to the return petitioner reported gross receipts of $27,145 and cost of goods sold in the amount of $31,101, for a loss of $3,956 from a business activity described by petitioner as a "speculation." Petitioner did not claim the loss as a deduction against his other income, but merely netted out the cost of goods sold from the income *251 to report zero income from his Schedule C activities. The $27,145 listed on petitioner's Schedule C as gross receipts included the 1982 installment of $15,000 from his lottery winnings. The remaining amounts of gross receipts were from miscellaneous gambling activities, primarily horse racing. The amount listed as cost of goods sold represented petitioner's gambling losses. In his notice of deficiency respondent accepted the $27,145 amount reported as gambling winnings and allowed $27,145 as an itemized deduction. We find as a fact that these amounts are accurate. Petitioner's primary place of gambling is the Thistledown horse racing track. The racing season is 200 days. Petitioner *252 attended the track approximately 175 days. He estimated that during the season he spent about 35 hours per week at Thistledown. When Thistledown was not open, petitioner attended a track at Waterford which had a different racing season. He also visted the casinos in Atlantic City and bought lottery tickets in every state between Ohio and New Jersey. Petitioner went to the track early in the morning to watch the horses and talk to owners and trainers in order to better estimate their abilities. He bought daily racing forms each day and studied them every evening. Petitioner kept a log showing his winnings and losses. The log indicates wins and losses on an average of three or four days per week during the racing season, although on a few weeks there is very little activity and on others activity is shown on six days per week. Petitioner did not make an entry in his log unless he actually gambled. However, he sometimes went to the track but did not place bets because there were no horses he liked. The log does not indicate the days petitioner attended the track but did not bet. In addition to his log, petitioner kept programs and tickets as records, and respondent has not *253 challenged the amounts shown. Petitioner collected unemployment compensation during 1982, and sought but did not find employment. From 1970 to 1981 petitioner owned race horses. OPINION Respondent agrees that petitioner has substantiated losses in the amount of $27,145, which is equivalent to the amount of wagering income. Respondent contends, however, that petitioner was not in the trade or business of gambling and the effect of this change is to make petitioner's unemployment compensation of $6,664 taxable. [2] Petitioner contends that he is in the trade or business of gambling. Both parties cite Commissioner v. Groetzinger, 480 U.S.     (1987), in support of their respective positions. In that case the Supreme Court held [W]e conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are here concerned. Respondent Groetzinger satisfied that test in 1978. Constant and large-scale effort *254 on his part was made. Skill was required and was applied. He did what he did for a livelihood, though with a less than successful result. This was not a hobby or a passing fancy or an occasional bet for amusement. Respondent contends that the facts in this case show that "the petitioner's wagering activity was not his livelihood during 1982. The petitioner was gainfully employed during 1982 and also had a regular source of income from his winnings paid by the Ohio Lottery Commission." Respondent's argument is apparently based on the following suppositions: (1) Groetzinger is limited to "full-time" gamblers, regardless of whether they meet the other criteria for being in a trade or business; (2) the 2 weeks' pay petitioner received in January 1982 for his work as a machine operator disqualifies him for the remainder of the year as a "full-time" gambler; and (3) the $15,000 petitioner received from the Ohio Lottery Commission should be regarded *255 as a source of income other than from gambling. [3] We need not reach the first proposition, because we find that petitioner did pursue his gambling activity full-time. At most, if at all, petitioner was in another trade or business for only two weeks in 1982. Certainly from mid-January onward, petitioner can fairly be said to have pursued his gambling activity full-time, in good faith, and with regularity, to the production of income for a livelihood. We have found no requirement, in Groetzinger or elsewhere, that a full-time endeavor must begin January 1st of each year to be considered "full-time." Quite the opposite. In fact, Mr. Groetzinger himself was employed as a salesman prior to February of the year in issue, but was a full-time *256 gambler after that time. See Groetzinger v. Commissioner,82 T.C. 793 (1984), affd. 771 F.2d 269 (7th Cir. 1985), affd. 480 U.S.     (1987). Mr. Groetzinger received interest of $1,330, dividends of $1,337, taxable gain on the sale of stock of $1,507, wages of $1,323 (earned before termination of his job), and "commissions" (payment for services to a former employer in connection with a survey) of $1,000. 82 T.C. at 794 n. 4. As in Groetzinger, petitioner's activity was not a mere hobby. During the racing season he devoted approximately 35 hours per week to this endeavor, attending the track, studying racing forms, interviewing horse owners and riders, and placing bets. When one track closed, petitioner moved on to another with a different racing season. When no horse races were being held, petitioner gambled in Atlantic City. He also consistently purchased lottery tickets from various states. We cannot classify petitioner's activities as a hobby or a passing fancy or an occasional bet for amusement. Furthermore, we have no doubt that the lottery payment petitioner received should be classified as gambling winnings. In *257 fact, the Form W-2G provided by the Ohio Lottery Commission is entitled "Statement for Certain Gambling Winnings." If we do not consider them as part of petitioner's 1982 effort, they would simply be removed from the equation (i.e., we would look at how petitioner earned the remainder of his livelihood for the year). That would bring us back to his remaining gambling winnings of $12,145, his wages of $923.77, and his unemployment compensation. Even under this analysis, we would regard petitioner's gambling activity in 1982 as having been pursued for the production of income for a livelihood. Thus, after considering all the facts in the record, we are convinced that petitioner was in the trade or business of gambling. Decision will be entered for petitioner.
Footnotes
1. The parties stipulated that petitioner was employed as a machine operator at A-M International, Inc. for a period of time during 1982. On the stand, however, petitioner testified that when he attempted to get his exact dates of employment from the company, they told him he was not employed at all in 1982, and that the check he received, representing two weeks' wages, was payment for employment completed in 1981. In any event, petitioner was employed for wages no more than two weeks in 1982.↩
2. If the Court finds that petitioner is not in the trade or business of gambling, respondent has conceded in the statutory notice and in the stipulation of facts that he is entitled to additional itemized deductions for taxes.↩
3. It is not clear whether respondent also believes petitioner's unemployment compensation similarly disqualifies him. On cross-examination respondent attempted to make a point that to qualify for unemployment compensation petitioner had to aver that he was seeking employment. If respondent's point is that seeking employment in one trade or business precludes a person from simultaneously practicing another trade or business, we do not agree.↩