T.C. Summary Opinion 2001-85

UNITED STATES TAX COURT

ELDRON U. ERBS, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1890-00S.                    Filed June 13, 2001.

Eldron U. Erbs, pro se.

James M. Klein and Mark J. Miller, for respondent.

DINAN, Special Trial Judge: The proceedings in this case were conducted pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $2,532 for the taxable year 1996.

The issue for decision is whether petitioner was engaged in the trade or business of gambling in 1996.

This case was submitted fully stipulated pursuant to Rule 122. All of the facts stipulated are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Oakdale, Wisconsin, on the date the petition was filed in this case. Petitioner's audit commenced on July 2, 1998.

Petitioner is semiretired. During the year in issue, he was engaged in a business in which he purchased and sold antiques. He incurred a loss of $3,415 in this business. Also during 1996, petitioner visited the Ho-Chunk Casino in Baraboo, Wisconsin, on at least 89 occasions. Ho-Chunk Casino produced a Player Coin Report which indicates petitioner had "coin-in" and "coin-out" amounts during the year of $368,166.95 and $341,530.20, respectively. Petitioner made bank withdrawals from automated teller machines in connection with his Ho-Chunk gambling activity on 88 separate dates. The following summarizes on a monthly basis the number of days he made withdrawals:

| Jan. | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. |
|------|------|------|------|-----|------|------|------|-------|------|------|------|
| 3 | 11 | 3 | 3 | 11 | 6 | 9 | 13 | 10 | 17 | 2 | 0 |

We treat these numbers as the approximate number of times petitioner visited the casino in each month. He would normally visit the casino during late evening and early morning hours, averaging 9 hours per visit.

Petitioner received six Forms 1099 in 1996 for gambling winnings. On his 1996 Federal income tax return, he reported the amounts indicated on the Forms 1099 as his only winnings from gambling. He reported this income of $10,538 on Schedule C, Profit or Loss From Business, claiming no cost of goods sold or expenses other than gambling losses of $10,538, resulting in zero net profit. Petitioner reported $27,865 in adjusted gross income, consisting of the following:

| | |
|---|---|
| IRA distributions | $26,600 |
| Social Security benefits | 3,052 |
| Interest | 1,628 |
| Business loss (antique sales) | (3,415) |
| Adjusted gross income | 27,865 |

In addition, petitioner received $9,530 in nontaxable net Social Security benefits. The occupation stated on his return was "retailer".

Respondent determined that petitioner's gambling activity was not an activity entered into for profit. Accordingly, respondent recharacterized petitioner's gambling income and determined that petitioner's gambling losses were deductible as an itemized deduction rather than as a trade or business expense. Respondent also determined that petitioner was entitled to

itemized deductions in lieu of the claimed standard deduction and allowed petitioner an additional itemized deduction for the payment of taxes. Finally, a computational adjustment was made to the amount of taxable Social Security benefits. Petitioner disputes respondent's determination that he was not engaged in the trade or business of gambling.

Ordinary and necessary expenses paid in carrying on a trade or business generally are deductible under section 162(a). A taxpayer who is engaged in the trade or business of gambling may deduct gambling losses and expenses, if otherwise permitted, only to the extent of the taxpayer's gambling winnings. See secs. 162(a) and 165(d); Valenti v. Commissioner, T.C. Memo. 1994-483. A taxpayer who is not engaged in the trade or business of gambling also may deduct such losses and expenses to the extent of their winnings, but must do so under section 165(a). A deduction under section 165(a) reduces a taxpayer's taxable income only if the taxpayer elects to forgo the standard deduction. See sec. 63.

Resolving the question whether a taxpayer is engaged in a trade or business "requires an examination of the facts in each case." Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987) (quoting Higgins v. Commissioner, 312 U.S. 212, 217 (1941)). The Supreme Court in Commissioner v. Groetzinger, supra, addressing

the question whether a full-time gambler who gambled solely for his own account was engaged in a trade or business, stated:

> to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. * * * we conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are here concerned. Respondent Groetzinger satisfied that test in 1978. Constant and large-scale effort on his part was made. Skill was required and was applied. He did what he did for a livelihood, though with a less-than-successful result. This was not a hobby or a passing fancy or an occasional bet for amusement. Id. at 35-36.

After his employer terminated his position in February 1978, the taxpayer in Groetzinger devoted the remainder of the year to parimutuel wagering, primarily on greyhound races. During this time, he spent 6 days a week for 48 weeks at the track and spent a substantial amount of time studying racing forms, programs, and other materials. In all, he devoted 60 to 80 hours each week to gambling-related activities. After February, he had no employment or profession other than gambling. He received $6,498 in non-gambling income from interest, dividends, capital gains, and salary earned prior to termination.[1]

---

[1]That the taxpayer in Groetzinger gambled "with a view to earning a living from such activity" was not disputed by the Commissioner. See Groetzinger v. Commissioner, supra at 24 n.2 (quoting Groetzinger v. Commissioner, 82 T.C. 793, 795 (1984)).

In this case, petitioner's visits to the casino were not continuous or regular. Petitioner points to the total number of hours he spent at the casino over the course of the year, and argues that he averaged 20 hours per week gambling. However, his visits to the casino throughout the year were very sporadic. The number of monthly visits rose as high as 17 in October, but in December he made no visits and in several other months he made only 2 or 3. Petitioner also argues that the amount of time he spent in his antique sales business is similar to the amount of time he spent in the gambling activity.[2] The aggregate amount of time spent in the activity is not as determinative as the fact that petitioner had little continuity or regularity to his visits. Finally, petitioner argues that the sporadic nature of his gambling was dictated by his knowledge of "how the machines were cycling or if the machines were being adjusted to reduce players odds." We do not accept this argument, both because it is not supported by any evidence and because we do not find it plausible that petitioner had knowledge of when the video poker machines were producing higher payoffs which was sufficiently accurate or specific to dictate when he should visit the casino.

The primary purpose of petitioner's gambling activity was for amusement, not for profit: His activity, although

---

[2]Respondent has not challenged petitioner's deduction of the loss from the antiques business, so we need not address the accuracy of petitioner's treatment of the activity as a business.

substantial, was more consistent with a hobby than a trade or business. He argues that he spent a significant amount of time studying "cycles" of video poker machines, reading publications relating to video poker, and practicing on his own video poker machine in order to "achieve greater success while gambling." These efforts would be consistent with a desire to win money. However, the desire to win money is consistent with gambling purely for its entertainment or recreational aspects, and we find that petitioner gambled primarily for this reason rather than primarily for profit.

Finally, we note that petitioner is semiretired and in 1996 received a substantial amount of income: Excluding his business loss of $3,415, he received over $40,000 in interest, individual retirement account distributions, and Social Security benefits. This income and petitioner's semiretired status indicate that he was not relying upon gambling for his livelihood.

In his trial briefs, petitioner discusses the material participation requirements of section 469 and the regulations thereunder. First, petitioner points to the references in these provisions to 500 hours of participation in an activity, arguing that he was in the trade or business of gambling because he devoted nearly twice that amount of time. See, e.g., sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). These provisions govern whether a trade or business is

passive and do not address the more fundamental question of whether an activity constitutes a trade or business.  Second, petitioner argues that instructions for the Schedule C provide that there are no "limitations on losses" for nonpassive activities (i.e., activities which meet the material participation requirements).  It is true that section 469 imposes no additional limitations on such losses, but the losses are still subject to the more general limitations discussed above.

We hold that petitioner was not engaged in the trade or business of gambling in 1996.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.