T.C. Memo. 2010-285

UNITED STATES TAX COURT

NEEDHAM AND ANGELA JARMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8770-08.                    Filed December 29, 2010.

Needham and Angela Jarman, pro sese.

<u>Edwina L. Jones</u> and <u>Scott L. Little</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following
deficiencies and penalties with respect to petitioners' Federal
income taxes for taxable years 2004 through 2006:

|       |            | Accuracy-Related Penalty |
| Year  | Deficiency | Sec. 6662(a) |
|-------|------------|--------------------------|
| 2004  | $14,866    | $2,973 |
| 2005  | 11,673     | 2,335 |
| 2006  | 9,214      | 1,843 |

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. All figures are rounded to the nearest dollar.

The issues for decision are: (1) Whether for each year at issue petitioners had unreported gross receipts from the electrical contracting business owned by Needham Jarman (petitioner); (2) whether petitioners' basis in a house that they sold in 2004 was greater than the $49,500 that respondent has conceded; (3) whether for 2004 petitioners are entitled to a $10,230 travel expense deduction; (4) whether for 2004 petitioners received unreported taxable interest income and an unreported taxable State income tax refund; and (5) whether for each year at issue petitioners are liable for the section 6662(a) accuracy-related penalty.[1]

---

[1]Angela Jarman did not appear at trial and did not execute the stipulation of facts. At trial respondent's counsel orally moved pursuant to Rule 123(b) to dismiss this case as to Ms. Jarman for lack of prosecution. The Court will grant respondent's motion and enter a decision as to Ms. Jarman consistent with the decision to be entered as to petitioner.

## FINDINGS OF FACT

The parties have stipulated some facts, which we so find. When they petitioned the Court, petitioners resided in North Carolina.

During the years at issue petitioner was self-employed as an electrical contractor, doing business under the name Unity Electrical Contracting (Unity).

After his mother died on April 17, 2001, petitioner and his three siblings inherited her house in North Carolina (the house). At some unspecified time petitioner began using the house as Unity's office and storage space. On March 11, 2004, the siblings and their spouses conveyed their interests in the house to petitioners for no consideration. On June 11, 2004, petitioners sold the house for gross proceeds of $70,000.

In 2004 Angela Jarman received $14 of interest income, and petitioner received an $877 refund of 2003 State taxes.

Petitioners filed joint Federal income tax returns for 2004, 2005, and 2006. On Schedules C, Profit or Loss From Business (Sole Proprietorship), they reported that Unity had gross receipts of $69,597, $66,979, and $125,636 for 2004, 2005, and 2006, respectively. On the 2004 Schedule C for Unity, petitioners claimed, among other things, $10,230 of travel expenses. On the 2005 and 2006 Schedules C, petitioners claimed no travel expenses but claimed fuel expenses of $8,894 and

$8,834, respectively.  Petitioners reported no income from the 2004 sale of the house.

On the basis of his bank deposits analysis, respondent determined that petitioners had unreported income from Unity of $16,305, $38,904, and $29,688, for 2004, 2005, and 2006, respectively.  Respondent disallowed the Schedule C travel expenses claimed for 2004 but not the fuel expenses claimed for 2005 and 2006.  Respondent also determined that with respect to their taxable year 2004 petitioners had a $70,000 unreported capital gain from selling the house, unreported interest income of $14, and an unreported $877 taxable refund of 2003 State income taxes.

## OPINION

A.  Burden of Proof

Petitioners have the burden of proving that respondent's determinations are in error.  See Rule 142(a).[2]

B.  Unreported Business Receipts

If a taxpayer fails to keep adequate records, the Commissioner may reconstruct the taxpayer's income by any reasonable method that clearly reflects income.  See, e.g., sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954).  One acceptable method is the bank deposits method.  Clayton v.

---

[2]Petitioners have not claimed and the record does not suggest that sec. 7491(a) applies to shift the burden of proof to respondent with regard to any factual issue.

Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Bevan v. Commissioner, T.C. Memo. 1971-312, affd. 472 F.2d 1381 (6th Cir. 1973). This method assumes that if a taxpayer is engaged in an income-producing activity and makes deposits to bank accounts, then those deposits, less amounts identified as nonincome items, constitute taxable income. See Clayton v. Commissioner, supra at 645-646. Where the Commissioner has used the bank deposits method to determine deficiencies, the taxpayer bears the burden of showing that the determinations are incorrect. See DiLeo v. Commissioner, supra at 871; Bevan v. Commissioner, supra.

The record is devoid of any books or records of the receipts and expenses of Unity, and petitioner does not claim to have maintained any. Petitioner does not dispute making the deposits underlying respondent's bank deposit analysis. But he contends that certain deposits were merely transfers from his personal accounts into his business account. Respondent has conceded that deposits totaling $3,600 in 2004 and $800 in 2005 were transfers from petitioners' savings account to petitioner's business account. Petitioners have failed to show that any additional disputed amounts included in respondent's analysis represent interaccount transfers.[3] Accordingly, we sustain respondent's

_____

[3]With respect to some amounts which petitioner contends represent interaccount transfers, the evidence indicates that
(continued...)

determinations as to petitioners' unreported taxable income from Unity, except to the extent of respondent's concessions.

C.    Sale of Real Property

Gross income means all income from whatever source derived, including gains derived from dealings in property. Sec. 61(a)(3). The gain from the sale of property is the amount realized less the property's adjusted basis. See sec. 1001(a). Generally, a property's basis is its cost. Sec. 1012. If property is acquired from a decedent, however, the basis is the property's fair market value at the date of the decedent's death, unless the alternate valuation date is elected. Sec. 1014(a). Where property is acquired by gift, the basis is the same in the hands of the donee as it was in the hands of the donor, except that, if the basis exceeds the fair market value of the property at the time of the gift, then, for purposes of determining loss, the basis shall be the fair market value. Sec. 1015(a).

A taxpayer's adjusted basis for determining gain or loss is the taxpayer's basis, adjusted as provided in section 1016. Sec. 1011(a). Under section 1016(a)(1), the basis of property must be adjusted for, among other things, expenditures, receipts, losses, or other items, properly chargeable to capital.

---

[3](...continued)
respondent's bank deposits analysis never included them as taxable income in the first instance.

In 2004 petitioners sold the house for gross proceeds of $70,000. In the notice of deficiency respondent determined that this entire amount represented capital gain because petitioners had established no basis in the house. In this proceeding respondent has conceded, on the basis of stipulated county property records, that petitioners had a basis in the house of $49,300. Petitioner contends that this amount should be increased by $9,854, which he claims is the amount he paid with respect to a mortgage on the house so that Unity could use it as an office and storage space after his niece moved out of it at some unspecified time.[4] Petitioner has failed, however, to substantiate either the purported mortgage debt or the payments he purportedly made with respect to it. Furthermore, on this record we are unable to conclude that petitioners have not already deducted any such payments in reporting Unity's profit or

---

[4]More particularly, petitioner claims that after his mother died he and his siblings agreed to let his niece live in the house so long as she would make the payments on a mortgage that had been obtained by unspecified persons at some unspecified time, apparently for the purpose of remodeling the house. He claims that after the niece fell into arrears on the mortgage payments, he paid the bank $5,538 to keep the house out of foreclosure and another $4,316 of mortgage payments before selling the house.

loss.[5]  Petitioner has failed to establish a basis in the house greater than the $49,300 that respondent has conceded.

D.   Travel Expense Deduction

A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business if the taxpayer maintains sufficient records to substantiate the expenses.  Secs. 162(a), 6001; sec. 1.6001-1(a), Income Tax Regs.  Section 274(d) imposes strict substantiation requirements for, among other things, traveling expenses and expenses relating to listed property, defined in section 280F(d)(4)(A)(i) to include passenger automobiles.  See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Under these requirements, the taxpayer must substantiate the claimed deduction with adequate records, or by sufficient evidence corroborating the taxpayer's own statement, showing the amount of the expense, the time and place of the use of the listed property, and the business purpose.  Sec. 274(d);

---

[5]On the Schedule C for Unity attached to petitioners' 2004 joint Federal income tax return, petitioners claimed a $4,344 deduction for "Repairs and maintenance".  We note that this deduction, unexplained in the record, approximates the $4,316 of mortgage payments that petitioner claims to have made after allegedly taking over the mortgage payments from his niece.  The record, which does not contain petitioners' earlier tax returns, does not foreclose the possibility that other amounts of mortgage payments might have been claimed as deductions against Unity's operations in earlier years.

see also sec. 1.274-5T(b)(6), (c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46017 (Nov. 6, 1985).

Rather than account for expenses item by item, the taxpayer may determine the ordinary and necessary expenses of the business use of a vehicle by using a standard mileage rate prescribed by the Commissioner. Sec. 1.274-5(j)(2), Income Tax Regs. For 2004 the standard mileage rate was 37.5 cents. Rev. Proc. 2003-76, sec. 5.01, 2003-2 C.B. 924, 925. A taxpayer who uses the standard mileage rate to determine the ordinary and necessary expenses of using a vehicle must still substantiate the amount of each business use (i.e., the business mileage) and the time and business purpose of each use. Sec. 1.274-5(j)(2), Income Tax Regs.

On the 2004 Schedule C for Unity petitioners claimed $10,230 of travel expenses. Attempting to substantiate this claimed deduction, petitioner relies on mileage logs which indicate that he drove 49,535 miles in 2004. But applying the 2004 standard mileage rate to 49,535 miles would result in a mileage allowance of $18,576 rather than the $10,230 petitioners actually claimed. Petitioners have not explained the discrepancy. Two possible explanations are: (1) The claimed travel expenses were not actually based on the mileage logs; or (2) petitioners implicitly concede that the mileage shown on the mileage logs is greatly overstated. In any event, we find that the mileage logs are

unreliable.  The mileage numbers, which appear as uniform handwritten notations in the margins of notebook paper on which jobs are listed at generally indecipherable locations, appear likely to have been added at one time after the fact.  Except for a relatively few entries that end with the numeral 5, all the mileage entries are multiples of 10.  At trial petitioner admitted that he regularly rounded up his mileage.  In many instances, identical mileage is recorded for different destinations.[6]  The mileage entries also contain other discrepancies that cause us to conclude that the mileage logs are unreliable.[7]  Petitioners have not supplemented the mileage logs with material corroborating evidence.  We conclude that petitioners have failed to meet the strict substantiation requirements of section 274(d).

Generally, if a taxpayer establishes that deductible expenses were incurred but fails to establish the amounts, we may estimate the amounts allowable, provided that evidence in the record provides a rational basis for the estimate.  Cohan v.

---

[6]For instance, for the first 3 months of 2004 the mileage logs include 21 entries that show identical mileage of 110 miles, even though the trips were to at least six different destinations.

[7]In some instances, another number has been written over the original entry to increase the number of miles claimed.  In one log entry, petitioner listed travel of 25 miles to and from a particular location, whereas several other entries list 125 miles traveled to and from the same location.

<u>Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).  In the case of travel expenses and expenses paid or incurred with respect to listed property, however, section 274(d) overrides the <u>Cohan</u> doctrine, and these expenses are deductible only if the taxpayer meets the stringent substantiation requirements of section 274(d).  <u>Berkley Mach. Works & Foundry Co. v. Commissioner</u>, 623 F.2d 898, 906-907 (4th Cir. 1980), revg. T.C. Memo. 1977-177; <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., <u>supra</u>. Because petitioners have failed to meet those stringent substantiation requirements, we sustain respondent's determination disallowing the deduction for travel expenses petitioners claimed on their 2004 joint Federal income tax return.[8]

E.    <u>Interest Income and State Income Tax Refund</u>

Respondent determined that petitioners failed to report on their 2004 joint return a $877 refund of 2003 State income taxes and $14 of interest income.  Petitioners have not disputed

---

[8]For 2005 and 2006 petitioners claimed, and respondent did not disallow, deductions for fuel expenses.  At trial petitioner asserted that he is entitled to deduct larger amounts of travel expenses (although he has not specified particular amounts) on the basis of his mileage logs.  His mileage logs for 2005 and 2006, however, suffer the same defects as those just discussed. For this reason, if for no other, we must reject petitioner's contention.

receiving these amounts and have advanced no argument that these amounts are not properly included in their taxable income.  We sustain respondent's determinations as to these items.

F.    Accuracy-Related Penalties

Respondent determined that for each year at issue petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) and (b)(1) and (2) for negligence or substantial understatement of income tax.  Respondent bears the burden of production with respect this penalty.  Sec. 7491(c). To meet this burden, respondent must produce evidence establishing that it is appropriate to impose this penalty.  Once respondent has done so, the burden of proof is upon petitioners. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Petitioners failed to keep adequate books and records and to properly substantiate claimed deductions.  Respondent has

carried his burden of production with respect to the section 6662(a) penalties for negligence.

Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The exact amounts of petitioners' underpayments will depend upon the Rule 155 computations, taking into account respondent's concessions and in accordance with our findings and conclusions. To the extent that those computations establish, as seems likely, that petitioners have substantial understatements of income tax, respondent has also met his burden of production in this regard. See Prince v. Commissioner, T.C. Memo. 2003-247.

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Petitioners have made no attempt to explain their failure to report income, to keep adequate books and records, and to substantiate items properly. We hold that for each year at issue petitioners are liable for a section 6662(a) penalty for negligence and, alternatively, for substantial understatements of income tax insofar as the Rule 155 computations show any.

- 14 -

To reflect the foregoing and respondent's concessions,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.