T.C. Memo. 2011-173

UNITED STATES TAX COURT

RANDY L. MOORE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4208-09.                    Filed July 18, 2011.

Randy L. Moore, pro se.

<u>Jeanne Gramling</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Respondent (the IRS) issued a notice of
deficiency for the tax year 2006 to Randy L. Moore determining an
income-tax deficiency of $9,112 and a section 6662(a)[1] accuracy-

_____

[1]All section references are to the Internal Revenue Code as
in effect for the year in issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

related penalty of $1,573. In the notice, the IRS concluded that Moore failed to report $8,893 of wages and $25,534 of gambling income. The IRS also disallowed a $500 education credit.

The parties now stipulate that (1) Moore earned $8,887 of unreported wages (not $8,893, as the notice determined), and (2) Moore is entitled to an additional withholding credit of $1,245, which he failed to claim on his 2006 tax return.

In addition, the IRS concedes that Moore reported the $25,534 of gambling income on a Schedule C, Profit or Loss From Business. (Moore actually reported $25,634 of gambling income, but he does not contest the IRS's assertion that his 2006 gambling income was only $25,534.) Moore also reported $40,989 of gambling expenses on the Schedule C. Of this $40,989, the IRS concedes that $25,534 can be deducted as "wagering losses" under section 165(d). However, the IRS contends that (1) the $25,534 must be classified as an itemized deduction, not a business-expense deduction; and (2) the remaining $15,455 of the $40,989 in reported gambling expenses did not constitute wagering losses and should be disallowed because Moore was not a professional gambler.[2]

---

[2]"Professional gambler" refers to an individual who is engaged in the trade or business of gambling within the meaning of secs. 162(a) and 62(a)(1).

The issues for decision are:

(1)  Was Moore a professional gambler in 2006?  We find he
was not.

(2)  Is Moore liable for the section 6662(a) accuracy-
related penalty?  We find he is liable if Rule 155
computations show a substantial understatement of
income tax.

Moore's entitlement to the $500 education credit is a
computational issue that will be resolved under Rule 155.

## FINDINGS OF FACT

Some facts are stipulated, and they are so found.  Moore
resided in North Carolina when he filed the petition.  In 2006,
Moore worked 40 hours a week as a traveling x-ray technician.  In
this capacity, he earned $63,619 from three different employers.

Moore started gambling in 2002 and continued to gamble
frequently from 2003 to 2006.  The timing of his casino visits
depended on the shifts he was assigned as an x-ray technician.
When he gambled, he primarily played slot machines.

Moore gambled frequently in 2006 but did not keep a schedule
of his casino visits.  Nor did he keep records of his gambling
transactions.[3]  As a result, the only documents that record

---

[3]Moore said that he called the IRS in 2004 to ask how to
keep track of his gambling losses and that the IRS told him he
could use bank statements.  Moore claimed to have kept bank
statements as records of his gambling transactions, but he did
(continued...)

Moore's gambling activities for 2006 are the Forms W-2G, Certain Gambling Winnings, issued by two casinos.[4]  The forms (12 in total) show gross gambling winnings of $25,534 for 2006.

On his 2006 tax return, Moore reported $54,732 of wages and claimed a $5,150 standard deduction.  He attached a Schedule C on which he stated that his principal business was "pro gambling", that he earned $25,634 of gambling income,[5] and that he incurred $40,989 of gambling expenses.  He divided the $40,989 of gambling expenses as follows:

| Type of Expense | Amount Claimed |
| --- | --- |
| Car and truck | $5,340 |
| Rent or lease--other business property | 1,500 |
| Supplies | 300 |
| Travel | 1,900 |
| Meals and entertainment | 5,475 |
| Utilities | 840 |
| Other--"bad debt" | 25,634 |
| Total | 40,989 |

---

[3](...continued)
not present any bank statements as evidence.

[4]Other documents from the two casinos purportedly have more data on Moore's gambling activities, but we do not find the documents comprehensible or reliable.

[5]As noted above, the IRS asserts that Moore's 2006 gambling income was only $25,534, which Moore does not contest.

He claimed a net Schedule C loss of $15,355 ($25,634 income –
$40,989 expenses), which reduced his gross income by $15,355.

The parties dispute whether Moore was a professional gambler
in 2006. Moore argues that he was a professional gambler and
that thus he can deduct the entire $40,989 of gambling expenses
on Schedule C. The IRS concedes that Moore can deduct $25,534 of
the expenses as "wagering losses" under section 165(d).[6] But the
IRS contends that Moore was not a professional gambler and that
therefore (1) the $25,534 deduction for wagering losses should be
an itemized deduction, not a business-expense deduction; and (2)
the remaining $15,455 of gambling expenses is not deductible.[7]

OPINION

I. Procedural Issues

A. Rule 37

The notice of deficiency took no position on whether Moore
was a professional gambler. The IRS remedied this failure in the
answer, where it alleged that Moore was not a professional
gambler. Rule 37(a) required Moore to file a reply within 45

---

[6]Gambling expenses other than wagering losses can be
deducted under sec. 162 if the taxpayer is a professional
gambler. The IRS argues that because Moore was not a
professional gambler in 2006, he cannot deduct gambling expenses
other than wagering losses.

[7]The IRS also notes that if Moore was not a professional
gambler, he should have reported the $25,534 of gambling income
as "other income" on Form 1040, U.S. Individual Income Tax
Return, rather than as business income on Schedule C.

days of service of the answer. When Moore did not file a reply, the IRS moved for an order deeming him to have admitted certain allegations in the answer, including the allegation that he was not a professional gambler. In response, we notified Moore that if he did not file a reply to the answer by August 3, 2009, we would grant the IRS's motion and deem admitted the allegations in the answer. Moore did not file a reply by August 3, 2009.

We need not address the effect of Moore's failure to reply. As explained below, the trial record shows that Moore was not a professional gambler. Thus the result does not depend on whether Moore has admitted this fact.

B.  <u>Burden of Proof</u>

Although taxpayers generally have the burden of proof, the IRS has the burden of proof on matters first raised in the answer. Rule 142(a)(1). For this reason, the IRS concedes that it has the burden of proving Moore was not a professional gambler.

II.  <u>Whether Moore Was a Professional Gambler in 2006</u>

Moore's gambling expenses can be divided into two categories: (1) wagering losses (i.e., the costs of wagers) and (2) gambling expenses other than wagering losses (e.g., the cost of traveling to a casino). Wagering losses are deductible only to the extent of wagering gains (i.e., winning bets). Sec. 165(d). This restriction applies even to professional gamblers.

Mayo v. Commissioner, 136 T.C. 81, 90 (2011).  Gambling expenses other than wagering losses are not subject to the restriction. Id. at 97.  Such expenses are deductible under section 162 if the taxpayer is a professional gambler.  See sec. 162(a) ("all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"); Mayo v. Commissioner, supra at 96-97.

To be a professional gambler, the taxpayer must have engaged in gambling for profit.  Sec. 183(a), (b), and (c); sec. 1.183-2(a), Income Tax Regs.; Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Section 1.183-2(b), Income Tax Regs., lists nine factors to consider in determining whether the taxpayer had a profit motive.  No one factor is dispositive.  Id.

Moore did not engage in gambling for profit.  This conclusion is supported by each of the relevant profit-motive factors listed in section 1.183-2(b), Income Tax Regs. (the fourth factor is irrelevant):[8]

(1) "Manner in which the taxpayer carries on the activity." Moore did not carry on his gambling activity in a businesslike manner.  He did not maintain records of his gambling transactions or attempt to improve his profitability.  See supra note 3 and accompanying text.

---

[8]The factors in sec. 1.183-2(b), Income Tax Regs., are not the only ones a court may consider.  Sec. 1.183-2(b), Income Tax Regs.

(2) "The expertise of the taxpayer or his advisors." Moore did not study gambling or consult gambling experts in preparation for his casino visits.[9]

(3) "The time and effort expended by the taxpayer in carrying on the activity." Moore's primary activity was working full time as an x-ray technician. Although he gambled frequently, the places he gambled and the time he devoted to gambling depended on his work schedule as an x-ray technician.

(4) "Expectation that assets used in activity may appreciate in value." This factor is irrelevant. Moore's gambling did not involve assets that he held for potential appreciation in value.

(5) "The success of the taxpayer in carrying on other similar or dissimilar activities." Moore had no history of success with business activities besides working as an x-ray technician and delivering food. There is no evidence that his success in these fields paved the way for success as a gambler.

(6) "The taxpayer's history of income or losses with respect to the activity." Moore conceded that gambling has never been profitable for him.

---

[9]Moore claimed to have "read a couple books" on gambling, but he did not study the subject in depth.

(7) "The amount of occasional profits, if any, which are earned."  As Moore conceded, his gambling has never been profitable.

(8) "The financial status of the taxpayer."  Moore earned $63,619 in 2006 by working as an x-ray technician.  He derived the bulk of his income from this work.  Cf. Commissioner v. Groetzinger, supra at 36 (taxpayer gambled as a livelihood).

(9) "Elements of personal pleasure or recreation."  Moore's gambling involved elements of personal pleasure and recreation.  He started gambling because he needed an activity to occupy his leisure time.  He at least partially enjoyed gambling.

Because Moore was not a professional gambler in 2006, he cannot deduct $15,455 of his claimed gambling expenses--the amount by which his gambling expenses exceed gambling income.  He is entitled only to a $25,534 deduction for wagering losses, which must be classified as an itemized deduction because it is not a business expense.  See secs. 165(d), 63(d), 62.  Because the IRS concedes the deductibility of $25,534 as wagering losses, we need not address whether Moore has substantiated his gambling expenses.

III. Section 6662(a) Accuracy-Related Penalty

The IRS determined that Moore is liable for a section 6662(a) accuracy-related penalty for substantial understatement of income tax.

Section 6662(a) imposes a 20-percent penalty on any part of an underpayment that is attributable to a substantial understatement of income tax. Sec. 6662(a) and (b)(2). Generally, an "understatement" is the excess of the tax required to be shown on the return over the tax shown on the return. Sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs. An understatement is substantial if it exceeds $5,000 and 10 percent of the tax required to be shown on the return. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Under two exceptions, an understatement may be reduced for purposes of calculating whether it is substantial. An understatement is reduced by any part of the understatement attributable to (1) an item whose tax treatment has substantial authority or (2) an item that was adequately disclosed and whose tax treatment has a reasonable basis. Sec. 6662(d)(2)(B).

Also, an exception to the accuracy-related penalty applies to any part of an underpayment for which there was reasonable cause and good faith. Sec. 6664(c)(1).

Under section 7491(c), the IRS has the burden of production for penalties. See Higbee v. Commissioner, 116 T.C. 438, 446

(2001) (stating that the IRS must produce "sufficient evidence indicating that it is appropriate to impose the * * * penalty", but that the IRS need not introduce evidence on exceptions to the penalty). We find that the IRS has met its burden if Rule 155 computations show Moore has a substantial understatement of income tax. See Jarman v. Commissioner, T.C. Memo. 2010-285, slip op. at 13.

The parties have not addressed who has the burden of proof on the various factual issues affecting Moore's liability for the penalty, including whether an exception to the penalty applies. We need not determine which party has the burden of proof because we find that the necessary facts are supported by a preponderance of the evidence. First, Moore improperly claimed $40,989 of gambling expenses as a business-expense deduction. Instead, Moore should have claimed $25,534 as an itemized deduction. See supra part II. Second, as the parties stipulated, Moore failed to report $8,887 of wages. Taking these errors into account, Moore understated his income tax. This understatement is substantial if Rule 155 computations show it exceeds $5,000 and 10 percent of the tax required to be shown on the return.

No exceptions to the substantial understatement penalty apply. Moore lacked substantial authority for claiming to be a professional gambler. See sec. 1.6662-4(d)(3)(i), Income Tax Regs. (substantial authority for the tax treatment of an item

exists only if the weight of supporting authorities is substantial in relation to the weight of contrary authorities). The only authority Moore cited was a 1987 Supreme Court case, presumably Commissioner v. Groetzinger, 480 U.S. 23 (1987), which he said supported the notion that he was a professional gambler because he gambled "full time".  But Moore's situation differs from that of the taxpayer in Groetzinger.  See sec. 1.6662-4(d)(3)(ii), Income Tax Regs. (an authority is not relevant if materially distinguishable on its facts).  The taxpayer in Groetzinger gambled 60 to 80 hours a week for 48 weeks during the year at issue and had no other employment. Commissioner v. Groetzinger, supra at 24.  Moore, in contrast, worked 40 hours a week as an x-ray technician and gambled during his personal time.

Likewise, Moore lacked a reasonable basis for claiming to be a professional gambler.  See sec. 1.6662-3(b)(3), Income Tax Regs. ("reasonable basis" is generally satisfied if a return position is reasonably based on an authority listed in section 1.6662-4(d)(3)(iii), Income Tax Regs., which includes court cases).  His position is not reasonably based on Groetzinger or any other authority.

Moore lacked both reasonable cause and good faith for claiming to be a professional gambler.  He made little effort to determine the proper tax treatment of his gambling activity.  See

sec. 1.6664-4(b)(1), Income Tax Regs. (most important factor for reasonable cause and good faith exception is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability"). He determined that he was a professional gambler in 2006 merely because he had seemingly large gross winnings.[10]

Moore gave no reason for failing to report $8,887 of wages on his 2006 tax return.

We conclude that Moore is liable for a section 6662(a) accuracy-related penalty if Rule 155 computations show a substantial understatement of income tax.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[10]Moore's gross winnings were offset by significant losses. As stated earlier, Moore had no history of net income from gambling.

At trial, Moore referenced an unnamed Supreme Court case (presumably Commissioner v. Groetzinger, 480 U.S. 23 (1987)) to support his position. But he admitted he had not read the opinion before filing his 2006 tax return. He also researched the definition of "professional" on the IRS website, but he did not do this until his return came under audit.