T.C. Summary Opinion 2014-78

UNITED STATES TAX COURT

DOUGLAS ZIERDT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14337-12S, 25419-12S.        Filed August 18, 2014.

Douglas Zierdt, pro se.

<u>Cory H. Ellenson</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petitions were filed.[1]  Pursuant to section 7463(b), the decisions to be entered are

_____

[1]These cases were consolidated for purposes of trial, briefing, and opinion.
(continued...)

not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's Federal income tax and accuracy-related penalties under section 6662(a) for the years and in the amounts as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $7,681 | $1,536 |
| 2010 | 17,726 | 3,545 |

Petitioner filed timely petitions for redetermination with the Court pursuant to section 6213(a). At the time the petitions were filed, petitioner resided in California.

The issues for decision are whether petitioner is (1) entitled to certain deductions claimed on Schedules C, Profit or Loss From Business, for expenses related to his stockbroker and gambling activities during 2009 and 2010 (years in issue) and (2) liable for accuracy-related penalties under section 6662(a).

---

[1](...continued)
Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended and in effect for 2009 and 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

## Background

Some of the facts have been stipulated and are so found. The stipulations of facts, the supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.

## I. Stockbroker Activity

During the years in issue petitioner worked part time as a stockbroker for Western International Securities. Petitioner testified that he started his workdays by purchasing several newspapers including Investor's Business Daily, the Wall Street Journal, Barron's, the New York Times, the Financial Times, the Los Angeles Business Journal, the Los Angeles Times, the Washington Post, and the San Francisco Chronicle. He further testified that he spent approximately $3,302 on these publications during each of the years in issue, he paid cash for the newspapers, and he did not obtain receipts for his purchases.

## II. Gambling Activity

### A. Wagering

Petitioner considers himself a professional gambler. He regularly spends the afternoon and evening hours wagering on horse races at tracks in southern California, including Santa Anita, Del Mar, Hollywood Park, and Los Alamitos. He also places bets on horse races and other sports events in California and

elsewhere in the United States remotely via telephone and Web sites such as TVG and Xpressbet.

Petitioner asserts that he has read books and attended seminars to improve his gambling skills, but he did not identify a specific book that he read, and he failed to produce any records to show that he attended a particular seminar.

Petitioner sometimes attempts to recruit new clients for his stockbroker activity while at the racetrack. In this regard, he distributes "The Zierdt Letter"--a summary of his thoughts on the stock market--to potential clients, and he sometimes holds business meetings with existing clients.

Petitioner spends approximately 45 hours per week gambling. He admittedly derives personal enjoyment from the activity.

B. Gambling Losses

Petitioner did not maintain complete records of the gross amounts that he wagered during the years in issue, but he acknowledges that he had net gambling losses (before taking into account his other gambling-related expenses) for each of the taxable years 2006 to 2010.

C. Gambling Expenses

In addition to the amounts he lost on wagers, petitioner incurred gambling-related expenses such as transportation costs to and from racetracks, food and

beverage expenses, parking and entry fees, and the cost of so-called tip sheets. Petitioner paid cash for most of the items he purchased while gambling, and he did not obtain receipts.

### D. Records

Petitioner maintained written logs of his gambling-related expenses for the years in issue. The logs generally list the date, the distance in miles that he drove to and from racetracks, the items that he purchased while there, and the cost of those items. The items listed in the logs include tip sheets, gasoline purchases, parking fees, racing forms, programs, and admission or entry tickets.

Petitioner's daily gambling expenses ranged from approximately $60 to $100 and $160 to $200 per day during 2009 and 2010, respectively. Petitioner's log for 2010 indicates that he normally spent $105 per day on food and entertainment at the racetrack.[2]

## III. Cellular Phone Records

Petitioner paid $504 and $491 for cellular phone service for 2009 and 2010, respectively. He maintained a record of his cellular phone calls for 2009 distinguishing calls related to his stockbroker activity (often identifying clients by name) from calls related to his gambling activity.

---

[2]Petitioner's log for 2009 does not include food and entertainment expenses.

Petitioner's records of his cellular phone use during 2009 indicate that approximately one-half of his calls that year related to his stockbroker activity and the remaining calls related to his gambling activity. Petitioner testified that he rarely used his cellular phone for personal calls during 2009.

Petitioner did not maintain detailed records related to his cellular phone use in 2010. He testified that during 2010 about 30% of his cellular phone calls were attributable to his stockbroker activity, 50% of his calls related to his gambling activity, and 20% of his calls were personal.

IV.  Tax Returns for 2009 and 2010

Petitioner timely filed Forms 1040, U.S. Individual Income Tax Return, for 2009 and 2010. For both years, petitioner reported "gaming income" as "Other Income" on line 21 of his Forms 1040 and "gaming losses" in amounts equal to his gaming income under "Other Miscellaneous Deductions" on Schedules A, Itemized Deductions. The parties agree that petitioner had gambling winnings of $7,780[3] and $41,173 during 2009 and 2010, respectively.

Petitioner attached Schedules C to both returns identifying the business activity as "Stockbroker". Petitioner did not file separate Schedules C for his

---

[3]Although this amount is $647 more than petitioner reported on his tax return for 2009, the parties agree that he likewise had additional gambling losses of $647 that year.

gambling activity but rather mislabeled and commingled his gambling and stockbroker expenses.

A. Schedule C for 2009

Petitioner reported gross receipts of $55,382 on Schedule C in respect of his stockbroker activity for 2009. He also reported total expenses of $52,735 including, in relevant part, $8,287 for repairs and maintenance, $19,128 for office expenses, and $5,548 for legal and professional services. Petitioner explained at trial that most of the repairs and maintenance expense represented his gambling expenses at Hollywood Park, the $19,128 amount identified as office expenses represented the total of his cellular phone charges and gambling expenses at Santa Anita and Del Mar, and the $5,548 expense identified as legal and professional services represented his gambling expenses at Los Alamitos.

B. Schedule C for 2010

Petitioner reported gross receipts of $65,160 on Schedule C in respect of his stockbroker activity for 2010. He also reported total expenses of $62,013, including $6,120 for insurance (other than health), $3,568 for commissions and fees, $9,328 for advertising, $4,827 for utilities, $9,563 for repairs and maintenance, $946 for meals and entertainment, and $22,871 for office expenses. Petitioner explained at trial that most of the expenses listed above represented the

total of his cellular phone charges and gambling expenses at various racetracks during 2010.

## V. Notices of Deficiency

### A. 2009

Respondent issued a notice of deficiency to petitioner for 2009 disallowing, for lack of substantiation, $7,295 of the deduction he claimed on Schedule C for repairs and maintenance expenses and the full amounts of the deductions he claimed for office expenses and legal and professional services.

### B. 2010

Respondent issued a notice of deficiency to petitioner for 2010 disallowing, for lack of substantiation, $22,626 of the deduction he claimed on Schedule C for office expenses and the full amounts of the deductions he claimed for insurance, commissions and fees, advertising, utilities, and repairs and maintenance.[4] As previously mentioned, respondent also determined that petitioner is liable for accuracy-related penalties under section 6662(a) for the years in issue.

---

[4]Respondent concedes that petitioner is entitled to Schedule C deductions for 2010 of $946 and $1,421 for meals and entertainment expenses and travel expenses, respectively.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner does not contend that the burden of proof shifts to respondent under section 7491(a).  In any event, because we decide the issues in dispute on the preponderance of the evidence, the allocation of the burden of proof is immaterial.  See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the

deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). Personal, living, or family expenses are generally nondeductible expenses. Sec. 262(a).

Section 274(d) prescribes more stringent substantiation requirements before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50

T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).  As relevant here for the taxable year 2009, the term "listed property" includes, inter alia, cellular phones. Sec. 280F(d)(4)(A)(v).  However, section 280F(d)(4) was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, which removed cellular phones from the definition of listed property.  The amendment is effective for taxable years beginning after December 31, 2009.  Id. sec. 2043(b).

To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure for travel, meals and entertainment, or business use of listed property.  Sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., supra, provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence.  The Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d).  Sanford v. Commissioner,

50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

## I. Stockbroker Activity

### A. Newspaper Expenses

Although we do not doubt that petitioner purchased newspapers and other financial publications as part of his stockbroker activity, he did not produce receipts or other records to substantiate his newspaper expenses. In short, petitioner's testimony aside, there is no objective evidence in the record to permit the Court to determine or attempt to estimate the amount of an allowable deduction for these items. See Williams, 245 F.2d at 560. Accordingly, we hold that petitioner is not entitled to deductions for newspaper expenses for the years in issue.

### B. Cellular Phone Expenses

#### 1. 2009

During the taxable year 2009 cellular phones were classified as listed property under section 280F(d)(4)(v) and, therefore, were subject to the strict substantiation requirements of section 274(d). Petitioner paid $504 for cellular phone service during 2009, and he produced records identifying calls that he made to clients in connection with his stockbroker activity. Petitioner's records

corroborate his testimony that approximately one-half of his cellular phone use in 2009 was related to his stockbroker activity. We conclude on this record that petitioner has satisfied the strict substantiation requirements prescribed in section 274(d) and that he is entitled to a deduction of $252 (50% of $504) for cellular phone expenses for 2009.

### 2. 2010

Cellular phones were no longer subject to the strict substantiation requirements of section 274(d) in 2010. The record shows that petitioner paid $491 for cellular phone service during 2010, and he credibly testified that approximately 30% of his cellular phone use in 2010 was related to his stockbroker activity. We therefore conclude that petitioner is entitled to a deduction of $147 (30% of $491) for cellular phone expenses for 2010.

## II. Gambling Activity

Section 165(d) provides that losses from wagering transactions are allowed as deductions only to the extent of the gains from such transactions. We have held that the phrase "[l]osses from wagering transactions" in section 165(d) refers to amounts expended on wagers, as distinguished from other expenses paid or incurred in carrying on the trade or business of gambling. See Mayo v. Commissioner, 136 T.C. 81, 90-97 (2011); Moore v. Commissioner, T.C. Memo.

2011-173. In this regard, expenses paid or incurred by a taxpayer in carrying on the trade or business of gambling, other than direct wagering expenses, are deductible under section 162(a) without regard to section 165(d). Mayo v. Commissioner, 136 T.C. at 97.

The parties disagree whether petitioner was engaged in the trade or business of gambling. Although petitioner maintains that he is a professional gambler, respondent determined that he engaged in gambling as a hobby, not as a business, and he is not entitled to deduct his gambling-related expenses under section 162(a). In the alternative, respondent determined that petitioner failed to properly substantiate the gambling expenses that he reported on Schedules C.

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In pertinent part, section 183(b) allows those deductions that would have been allowable had the activity been engaged in for profit only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year

under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable under section 162 or under section 212(1) or (2) if the taxpayer is engaged in the activity with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record. Groetzinger v. Commissioner, 82 T.C. 793, 803 (1984), aff'd, 771 F.2d 269 (7th Cir. 1985), aff'd, 480 U.S. 23 (1987); sec. 1.183-2(b), Income Tax Regs. In resolving this factual question, greater weight is given to objective facts than to a taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth the following nonexhaustive list of factors that may be considered in deciding whether a profit objective exists: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in

the activity may appreciate in value;[5] (5) the taxpayer's success in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. No single factor, nor even the existence of a majority of factors supporting or rebutting the existence of a profit objective, is controlling, and all facts and circumstances with respect to the activity are to be taken into account. Id.; see Groetzinger v. Commissioner, 82 T.C. at 803.

A. Manner in Which Petitioner Carries On the Gambling Activity

If a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records, it may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. A change of operating methods or adoption of new techniques with the aim of improving profitability may also indicate a profit motive. Id. However, if the taxpayer's records are not used to improve the performance of a losing operation, such records generally do not indicate a profit objective. See Merkin v. Commissioner, T.C. Memo. 2008-146.

Petitioner did not maintain complete and accurate records of his gambling losses or gambling-related expenses. He often erred in tallying his daily expenses.

---

[5]The parties agree that this factor is not relevant to our analysis.

On some dates in 2010, the stated total of expenses exceeded actual daily expenses by more than $100. We also note that in some instances petitioner's records contain two different statements of expenses for a specific date, and in other instances he simply failed to record the date.

There is no evidence that petitioner changed his operating methods, adopted new techniques, or analyzed his gambling losses and gambling-related expenses in an effort to improve his performance or to enhance the likelihood of earning a profit from the activity. We conclude that petitioner did not conduct the gambling activity in a businesslike manner.

B. Expertise of Petitioner or His Advisers

Preparation for the activity by extensive study of its accepted business practices, or consultation with those who are expert therein, may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner did not identify specific books that he had read, and he failed to show that he attended a particular seminar to gain expertise in gambling. Although he regularly consulted "tip sheets" before placing bets, we are not persuaded that petitioner achieved any level of expertise handicapping horse races. See Merkin v. Commissioner, T.C. Memo. 2008-146 (finding that reading video poker magazines and scouting poker

machines on the casino floor did not validate the taxpayer's claim that he was a poker expert). This factor weighs against petitioner.

### C. Time and Effort Expended in Carrying On the Activity

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner devotes approximately 45 hours per week to gambling. His gambling records from TVG and Xpressbet show that he placed numerous wagers in 2009 and 2010. We conclude that petitioner devoted substantial time and effort to gambling--this factor weighs in his favor.

### D. Petitioner's Success in Carrying Out Other Similar or Dissimilar Activities

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that the activity in question was engaged in for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Although petitioner has achieved success as a stockbroker, that activity is not sufficiently similar to wagering on horse races to provide any insights as to his profit motive with regard to gambling. Petitioner did not offer evidence that he has profitably engaged in other gambling activities. This factor weighs against petitioner.

E.  Petitioner's History of Income or Loss

"A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit."  Sec. 1.183-2(b)(6), Income Tax Regs.  However, if a taxpayer continues to sustain losses beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses, if not explainable, may indicate that the activity is not engaged in for profit.  Id.  The "goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years."  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967); see also Foster v. Commissioner, T.C. Memo. 2012-207.

As discussed above, although we do not have a complete picture, petitioner admits that he had net losses from his gambling activity during the period 2006 to 2010.  Petitioner's history of uninterrupted losses is indicative of a lack of profit objective.  See Golanty v. Commissioner, 72 T.C. at 427; Moore v. Commissioner, T.C. Memo. 2011-173.  This factor weighs against petitioner.

F.  Occasional Profits

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Sec. 1.183-2(b)(7), Income Tax Regs.  While petitioner has placed winning bets, he admits that his gambling activity has never been profitable.  When petitioner's gambling-related expenses are added to the mix, his losses from the activity far outstrip any gambling-related income.  This factor is indicative of his lack of a profit motive.  See Golanty v. Commissioner, 72 T.C. at 427-428; Moore v. Commissioner, T.C. Memo. 2011-173.

G.  Petitioner's Financial Status

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit."  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Id.  Petitioner earned $55,382 and $65,160 as a part-time stockbroker during 2009 and 2010, respectively.  If he is permitted to deduct his gambling-related expenses from his stockbroker income, his taxable income will be significantly reduced.

For example, the deductions that petitioner claimed in respect of his gambling activity in 2010 would have reduced his taxable income to less than $4,000. While it does not appear that petitioner gambles with the principal goal of reducing his tax liability, the fact that he derives substantial income from the stockbroker activity allows an inference to be drawn that he is not engaged in the gambling activity for the production of income. This factor weighs against petitioner.

### H. Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are elements of recreation or personal pleasure. Sec. 1.183-2(b)(9), Income Tax Regs. As discussed above, petitioner testified that he enjoys trips to the track and gambling on horse races. Thus, this factor weighs against petitioner.

### I. Conclusion

Considering all the facts and circumstances and weighing the factors analyzed above, we hold that petitioner did not conduct his gambling activity in a businesslike manner and he did not engage in that activity with the requisite profit objective during the years in issue. Consequently, we sustain respondent's

determinations that petitioner is not entitled to deductions under section 162(a) for the gambling-related expenses he reported on Schedules C for 2009 and 2010.

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is due to the taxpayer's negligence or disregard of rules or regulations or that is attributable to any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-

447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Assuming (as we do) that Rule 155 computations will show that petitioner substantially understated his income tax liabilities for the years in issue, respondent will have satisfied his burden of production.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner prepared his tax returns himself. He did not file separate Schedules C with his returns, and instead he claimed deductions for gambling expenses on Schedules C that identified the business activity as "Stockbroker". Such inaccurate and misleading income tax reporting does not reflect a reasonable attempt to comply with the Code. In sum, we conclude that petitioner failed to show that there was reasonable cause for, and that he acted in good faith with

respect to, the underpayments in these cases. <u>See</u> sec. 1.6664-4(a), Income Tax

Regs. Consequently, we hold that petitioner is liable for accuracy-related

penalties for 2009 and 2010.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.